James RICHTER, Robert Laden, Murray Cantor, Judith Newman, Gerard D'Amore, Michael Rogers, Lloyd Bascone, Judith Danzig, Daniel Woehrle and Carol Rosenblatt, Plaintiffs,

and

Christopher Tyler and Kareiss Grenier, Intervenors-Plaintiffs,

v.

Leonard SUDMAN, Norman Simon, Columbia Auto Stereo, Inc., L & N Enterprises, Richard Richter, Tartufo Italgelateria, Inc., Defendants.

No. 85 Civ. 2773 (GLG).

United States District Court, S.D. New York.

April 30, 1986.

Richard P. Caro, New York City, for plaintiffs and intervenors-plaintiffs.

Milgrim Thomajan Jacobs & Lee, P.C., New York City, for defendants Leonard Sudman, Norman Simon, Columbia Auto Stereo, Inc., L & N Enterprises, and Tartufo Italgelateria, Inc.; Robert A. Meister, Mark D. Suben, Armen R. Vartian, of counsel.

## OPINION

GOETTEL, District Judge:

This action, and the RICO claim asserted herein, arises out of an apparently ill-fated investment in Tartufo Italgelateria, Inc. ("Tartufo"), a California manufacturer of premium ice cream and specialty dessert products. Defendants Leonard Sudman ("Sudman"), Norman Simon ("Simon"), Columbia Auto Stereo, Inc., and L & N Enterprises are shareholders, officers, or directors of Tartufo, or are otherwise affiliated with Tartufo. All are California citizens. The plaintiffs include ten investors in Tartufo, and two individuals, Robert Laden (also an investor) and James Richter, who induced the other plaintiffs to invest in Tartufo.

On February 28, 1986, the defendants moved to dismiss the RICO claims in the third amended complaint for failure to

state a claim on which relief can be granted and for failure to plead fraud with particularity. The defendants also moved to dismiss the complaint for lack of subject matter jurisdiction to the extent that it rests on an allegation of diversity jurisdiction. At oral argument the Court granted the defendants' motion to dismiss the RICO claims. We take this opportunity to supercede our oral decision with this written decision, incorporating our findings therein, and, in particular, stating our views as to the pattern requirement under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1982) ("RICO").

## I. BACKGROUND

The amended complaint alleges the following facts which, for purposes of considering the defendants' motion, we must deem true.

During the summer of 1984, the plaintiffs James Richter and Robert Laden ("Laden") entered into an agreement with the defendants Leonard Sudman, Norman Simon, Columbia Auto Stereos, Inc., L & N Enterprises, and Tartufo. These defendants granted James Richter and Laden the exclusive right to raise capital for Tartufo from prospective investors. To induce Richter and Laden to enter into this agreement and to find investors, the defendants allegedly made numerous material misrepresentations and omissions concerning Tartufo's present and future business prospects.

An escrow account was established in California to hold funds invested in Tartufo. During the fall of 1984, James Richter and Laden persuaded eleven investors, including Laden and ten of the individual investor plaintiffs, to invest $325,000 in Tartufo. Tartufo subsequently advised the individual investors, most by written letter, that the funds would only be released from escrow to Tartufo upon the satisfaction of certain conditions designed to make the investment less speculative. At a December 1984 meeting in New York, James Richter and Laden met with the defendants Sudman and Simon to iron out the condi-

tions of the escrow. The parties agreed to a number of conditions that the defendants would have to satisfy before the funds could be removed from escrow and stock certificates issued to the investors. Two signatures were required to release funds from the escrow account. One had to be that of the defendant, Richard Richter (James Richter's brother); either defendant Sudman or defendant Simon could provide the other signature.

On January 18, 1985, and prior to the satisfaction of the conditions for release of the escrowed funds, the defendants withdrew $200,000 of the investors' money from escrow and used it to pay taxes and creditors, and to meet payroll obligations. The defendants nonetheless continued to represent to the plaintiff investors, as well as to plaintiffs James Richter and Robert Laden, that the funds remained in escrow.

When plaintiffs Richter and Laden learned of the withdrawal, they demanded that the defendants return all of the investors' money. At first, James Richter and Laden were told that $125,000 could be returned immediately. They were then informed that the remaining $125,000 would be held in escrow. Finally, they learned that Tartufo had used portions of the remaining $125,000.

When efforts to persuade Tartufo to return all of the transferred monies to the escrow account, or, at least, to agree to leave the remaining monies in escrow failed, James Richter and Laden commenced this action against Sudman, Simon, Richard Richter, Tartufo, and two of their affiliated companies, for breach of contract, violation of the New York and California securities laws, breach of fiduciary duty, and violation of various federal securities laws. Soon after filing their original complaint, the plaintiffs moved pursuant to Fed.R.Civ.P. 65 for temporary and preliminary injunctive relief directing the defendants to restore the $325,000 to escrow and restraining them from disposing of that portion of the original $325,000 that remained in escrow. An amended complaint

filed soon thereafter added various individual investors as plaintiffs.

On May 7, 1985, the Court entered a temporary restraining order enjoining the defendants from utilizing any portion of the $325,000 that remained in escrow. On June 19, 1985, after an evidentiary hearing, the Court preliminarily enjoined the defendants from disposing of that portion of the $325,000 that remained in escrow. *Richter v. Sudman,* No. 85–2773, slip op. (S.D.N.Y. June 19, 1985) (Findings of Fact and Conclusions of Law). After the plaintiffs again amended their complaint, the defendants answered. On November 26, 1985, the plaintiffs filed a third amended complaint, adding three claims under the Racketeer Influenced and Corrupt Organizations Act, as well as adding two plaintiffs, one of whom is a citizen of California.

## II. DISCUSSION

### A. *Subject Matter Jurisdiction*

██ Prior to holding the June 19, 1985 evidentiary hearing, the Court dismissed the plaintiffs' various Securities Act claims for failure to plead fraud with particularity. Since those were the plaintiffs' only federal claims, it was incumbent upon the plaintiffs to establish another basis of federal subject matter jurisdiction. The plaintiffs then satisfied the Court that they had established diversity jurisdiction: all of the defendants were California citizens; none of the plaintiffs were California citizens. The plaintiffs' third amended complaint added as an additional plaintiff, Christopher Tyler, a California citizen who had invested in Tartufo. However, the plaintiffs preserved federal jurisdiction by repleading their securities claims. The defendants have not objected to those pleadings, nor have they moved to dismiss those claims. The Court, therefore, has federal subject matter jurisdiction.[1]

1. The defendants move to dismiss the third amended complaint to the extent that it purports to be based on diversity jurisdiction. The plaintiffs admit that the Court no longer has diversity jurisdiction and offer to strike from the complaint any reference to diversity or to the diversity statute. In the Court's view, that is sufficient. The Court will deem those allegations stricken.

### B. *The RICO Claims*

The plaintiffs purport to state claims under subsection (a), (b), and (c) of section 1962 of RICO, 18 U.S.C. § 1962 (1982). Subsection (c) provides in pertinent part that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (1982). Subsection (b) states that "[i]t shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (1982). Subsection (a) states,

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a) (1982). This provision prevents persons engaged in a RICO enterprise from retaining the spoils of their illegal activity.

#### 1. The "Pattern of Racketeering Activity"

██ Although the requirements for pleading and proving a violation of these subsections may differ, one prerequisite

must be pleaded in every instance: a "pattern of racketeering." Section 1961(1) defines "racketeering activity" as any of a large number of specified illegal acts, including securities fraud and mail fraud. 18 U.S.C. § 1961(1) (1982). To properly allege a "pattern of racketeering," the complaint must allege at least two acts of racketeering activity, one of which occurred after the effective date of [the RICO statute], and the last of which occurred within ten years ... after the commission of a prior act of "racketeering activity." 18 U.S.C. § 1961(5) (1982).

Although the language of the statute requires only two predicate acts, the Supreme Court, in *Sedima S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), suggested that "[t]he 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" *Id.* at 3287. In a footnote, the Court indicated how the definition of pattern might be restrictively interpreted. It stated,

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate

business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern". S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Id.* at 3285 n. 14. The Court proceeded to cite further support in the legislative history for its view that far more than two acts must be alleged to state a claim under RICO. *Id.* Many lower courts have taken to heart the Supreme Court's message.

In numerous decisions, the courts in this and other districts have focused on the continuity aspect of the Supreme Court's formulation.[2] In *Kredietbank, N.V. v. Morris,* No. 84–1903, slip op. (D.N.J. October 11, 1985) (available on Lexis, Genfed library, Dist. file), Judge Sarokin wrote that

the mere allegation of two instances of submitting a false affidavit to a court in connection with a single matter under litigation does not, without more, constitute a pattern of racketeering activity. A single matter under litigation is necessarily finite and circumscribed rather than open-ended and potentially ongoing. Even if an enterprise resorts to fraud in an effort to prevail in one court battle, the enterprises' actions do not necessarily constitute a "pattern" of racketeering activity as contemplated in RICO because the end of the litigation will spell the limit of the enterprises' fraudulent scheme.... In contrast, the fact that an enterprise makes it a practice to submit false affidavits in lawsuits in general in which it is involved might well indicate a pattern of unlawful activity.

*Id.* at 15. The Court's distinction here is important. The fact that a single activity may continue over a particular length of time does not necessarily establish a pattern. Indeed, the issue is not the continui-

---

**2.** The term "continuity," as used in this context, is a misnomer. What is meant is continuous activity. To properly allege a pattern of racketeering, the general illegal activity must be continuous, or must threaten to continue for a significant period of time. Continuity does not necessarily refer to the frequency of the activity, although the frequency of the individual acts which comprise the general untoward conduct may be relevant in examining whether or not a pattern exists.

ty of a single activity, but whether the defendants had a *practice* of engaging in the same or similar types of activity. Judge Sarokin's distinction is also notable in that it suggests the presence of another element: distinct, multiple acts, which, when taken together, gives rise to the inference of a broad, general practice of proscribed activity. By focusing on whether the defendants had a history of submitting false affidavits, the Court was able to differentiate between a genuine pattern, and a single transaction that had been carved into pieces to satisfy the statutory requirement of two predicate acts. *Cf. Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188, 1199 (S.D.N.Y.1985) (Sweet, J.) (neither a single criminal episode nor a single fraudulent scheme will suffice to establish a pattern, regardless of the number of individual acts that may be required in order to complete the scheme); *District Telecommunications Development Corp. v. District Cablevision, Inc.*, 638 F.Supp. 418, 421 (D.D.C.1985).

Judge Sarokin's interpretation of a pattern closely follows that articulated in *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985), in which the Court found that mailings made in connection with a construction contract kickback scheme failed to establish a pattern of racketeering activity. Rather, the two specified acts—the mailing of a subcontract and the mailing of a kickback check—were part of the same fraudulent scheme. *Id.* at 833.

More recently, and closer to home, Judge Sand reiterated the definition of pattern found in the *Inryco* decision. After comprehensively surveying the post-*Sedima* decisions, he concluded in *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244 (S.D.N.Y.1986) (Sand, J.), that "the correct interpretation of the 'pattern' requirement as articulated by *Sedima* and its progeny requires more than two related acts." *Id.*

at 254. Judge Sand also suggested that, in addition to alleging the predicate acts, the plaintiff must also establish " 'some sort of continuity between the acts or a threat of continuing criminal activity.' " *Id.* at 254 (citations omitted). Acts which are simply performed "in the execution of a single [allegedly] fraudulent scheme" do not satisfy the pattern requirement. *Id.*

The Court in *Furman v. Cirrito*, No. 82–4428, slip op. at 15 (S.D.N.Y. March 12, 1986) (Cooper, J.) (available on Lexis, Genfed library, Dist. file) [Available on WESTLAW, DCTU database], similarly examined whether the complained of activity was continuous. Although the Court concluded that the mail and wire frauds alleged in the complaint were related, it found that they were related to one scheme involving a single sale. *Id.* at 15. Since "[t]here [was] no allegation that the defendants were involved in other such episodes, or that this scheme was on-going," *id.*, the court declined to find a "pattern."

The most recent opinion in this district discussing the pattern requirement also holds that a single scheme, though comprised of numerous predicate acts, will not suffice to establish a pattern for the purposes of RICO. In *Crummere v. Brown*, No. 85–1376, slip op. at 8–9 (S.D.N.Y. April 3, 1986) (Sweet, J.) (available on Lexis, Genfed library, Dist. file) [Available on WESTLAW, DCTU database], the plaintiff, an individual investor, claimed that the defendant's illegal wire transfers of her money, his fraudulent sale of her securities, and his conspiracy to commit the same, satisfied the pattern requirement. The Court disagreed, finding that these "multiple predicate acts" were simply a series of events necessary to complete the single fraudulent scheme of diverting the plaintiff's funds. *Id.* at 9. The *single* scheme did not constitute a pattern. *Id.* [3]

---

**3.** We are aware of a line of cases that holds that acts of mail fraud involving a single scheme to defraud two or more persons will constitute a RICO pattern. *See United States v. Weather-*

spoon, 581 F.2d 595, 601–02 (7th Cir.1978); *First Federal Savings & Loan Association v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427, 445 (S.D.N.Y.1986) (Lasker, J.); *United States v. Beat-*

■ Not only must a definition of pattern effectively distinguish between a pattern of activity and a single transaction whose separate, component acts mimic a pattern, but it must also incorporate the relatedness aspect of the formulation. Thus, the separate acts which comprise the illegal activity must be sufficiently related so as to give rise to a general pervasive scheme of untoward conduct. The individual predicate acts may, of course, vary, as will the victims against whom the acts are directed.

■ With this background in mind, we turn to the defendants' contention that the plaintiffs have not alleged a "pattern of racketeering activity." The plaintiffs assert that they have set forth four separate but related fraudulent schemes. The first induced the plaintiffs Richter and Laden to raise funds for Tartufo. The second induced the investors to place their money in escrow. The third concealed the premature withdrawal of the escrowed funds, and the fourth involved the further expenditure of escrowed funds. Although the specific actions underlying each alleged fraud varied, each served a common end, raising money for Tartufo without apparent regard for the interests of potential investors. To hold that this single scheme constitutes a pattern of racketeering activity would be to carve a single fraudulent episode into its component parts. The plaintiffs have not alleged that the defendants have engaged in similar schemes to defraud other investors, nor is there any evidence that this particular scheme is on-going or continuous. Once the defendants dispose of the investors' funds, the fraudulent scheme comes to an end. There is no continuing threat of criminal activity. In contrast, should the defendants again attempt to raise money for Tartufo through fraudulent means, there would be evidence of a "pattern," along with evidence of a con-

tinuing threat of such untoward activity. As the plaintiffs have failed to plead a pattern of racketeering activity, their RICO claims are dismissed.

2. The "Enterprise"

■ The defendants also move to dismiss the RICO claims on the ground that the defendant Tartufo is named both as the "person" and the "enterprise" involved. The law is settled in this circuit with respect to a claim under § 1962(c) that "a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* ——— U.S. ———, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Since they are being sued, the named defendants are considered the RICO "persons"; therefore, they cannot also be the "enterprise." To the extent that the third-amended complaint names Tartufo as both person and enterprise, it must be dismissed.

■ Finally, the third-amended complaint does not actually specify the RICO enterprise. Such vague and unclear allegations are unacceptable and provide an independent basis for dismissing the RICO claims arising under § 1962(c).

3. Failure to Plead Fraud with Particularity

The defendants also move to dismiss the RICO claims for failure to plead the predicate acts with particularity. The defendants claim that RICO imposes a peculiar pleading burden, even more stringent than that otherwise imposed by Fed.R.Civ.P. 9(b). Since we have already dismissed the RICO claims on other grounds, we need not consider whether such special pleading requirements pertain to RICO.

ty, 587 F.Supp. 1325, 1328–29 (E.D.N.Y.1984); *Beth Israel Medical Center v. Smith,* 576 F.Supp. 1061, 1066 n. 5 (S.D.N.Y.1983). However, we take issue with the proposition that a single instance of mail fraud, though perpetrated against two or more persons, can constitute a

pattern. Accordingly, we part company with a recent decision in this district, *First Federal Savings & Loan Association, supra,* which holds that mailings of the same fraudulent information to two or more investors over several days satisfies the pattern requirement.

## CONCLUSION

The defendants' motion to dismiss the RICO claims is granted. All references in the amended complaint to diversity jurisdiction will be deemed stricken.