**BEAR CREEK PRODUCTIONS, INC. and Cheryl McCall, Plaintiffs,**

v.

**Angelika T. SALEH, Joseph Saleh, and Angelika Films, Inc., Defendants.**

**No. 85 Civ. 8704 (EW).**

United States District Court, S.D. New York.

Sept. 9, 1986.

Berger, Steingut, Weiner, Fox & Stern, New York City, for plaintiffs; Robert A. Weiner, Howard A. Wintner, of counsel.

Markewich, Friedman & Markewich, P.C., New York City, for defendants; Robert Markewich, Daniel Markewich, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

A contract for the financing and production of a film has spawned this lawsuit replete with eight separate claims allegedly grounded upon federal statutory and pendent jurisdiction. Plaintiffs, producers of a documentary film on homeless children, commenced this action alleging that defendants, who entered into a contract to finance and market the film, have breached the contract, committed fraud in inducing plaintiffs to enter the contract, and violated the Lanham Act. Plaintiffs also make the seemingly inevitable civil RICO claim now commonly appended in actions sounding in contract and fraud. Defendants move to dismiss the civil RICO count for failure to state a claim upon which relief can be granted and move to dismiss the remaining seven Counts for lack of subject matter jurisdiction.

In 1983, Bear Creek, a film production company, completed filming a documentary about homeless children which was based upon a magazine article, "Streets of the Lost" (the "article") by Cheryl McCall, a co-plaintiff herein. In January 1984, in order to finance the post-production costs of the film, Bear Creek and Angelika Saleh ("Saleh") entered into a letter agreement whereby Saleh agreed to provide $150,000 toward the production of the film in exchange for a percentage of the film's profits and credit for Angelika Films, Inc. (owned by Saleh and her husband, Joseph, a co-defendant) as Executive Producer of the film. The agreement also granted Saleh an option to purchase all rights in the film, including its copyright, for an additional $200,000 (the "purchase price") payable in installments. Upon exercise of that option, all rights in the film were to pass to Saleh.

In the event that Saleh exercised her option to purchase the film, and until the installment payments were completed, Saleh was to pay to Bear Creek all gross proceeds from the film within 15 days of their receipt, as well as interest on the unpaid balance of the purchase price. Upon exercise of the option and payment of the first installment of the purchase price, Saleh would have the right to enter into agreements for the distribution of the film, but would be required to consult with Bear Creek regarding any sale or license of the rights in the film. Upon recoupment of her $350,000 investment, Saleh was to pay Bear Creek 40% of all gross proceeds from the film. Both parties were to "have a security interest in the Picture and its proceeds to secure payments due under the agreement."

Under an amendment to the agreement, Saleh agreed to pay an additional $40,000 in production costs, and the installment schedule for the Salehs' payments upon exercising the option was modified. The amendment expressly stated that "Saleh hereby exercises her option ... to purchase the Picture" and "Bear Creek hereby assigns all rights in the Picture to Saleh pursuant to the terms of the Agreement, as

amended."[1] The amendment also stated that "Saleh shall copyright the Picture in her name (or such other name as she shall determine)."[2]

Plaintiffs' complaint, which includes as exhibits the parties' original agreement and the amendment thereto, sets forth eight separate counts. The first count alleges that Saleh materially breached the contract by failing to make payments, failing to pay 10% interest, withholding Bear Creek's share of the profits, failing to consult with Bear Creek regarding material matters, failing to permit Bear Creek to purchase prints of the film, and failing to give Bear Creek proper credit in advertising and other promotional materials. Count Two alleges that Saleh's husband induced her breaches of the contract. Count Three alleges that Saleh and her husband fraudulently induced Bear Creek to enter into the agreement by falsely representing that they would perform all of their obligations under the agreement. Count Four alleges that because Saleh failed to pay the purchase price, all rights in the film have reverted to or belong to Bear Creek and, therefore, defendants have violated Bear Creek's copyright in the film by reproducing, distributing, selling, and advertising the film. In Count Five, plaintiffs allege that defendants have engaged in false designation of origin and false representation in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by failing to identify Bear Creek as the origin and source of the film in trailers, advertisements, and other promotional material. Count Six asserts a claim for enforcement of Bear Creek's security interest in the film and its proceeds. Count Seven alleges that defendants have committed civil RICO violations by engaging in acts of racketeering activity. Finally, Count eight alleges that the copyright of plaintiff Cheryl McCall in the article upon which film was based is being violated by defendants' distribution of the film and will be violated because defendants intend to use their copyrights in the film in a manner that exceeds the scope of the rights purportedly granted to Saleh.

Plaintiffs base federal subject matter jurisdiction over count Seven, the RICO Count, on 18 U.S.C. § 1964, a special provision for federal jurisdiction in RICO cases. They maintain that Counts Four, Five, and Eight fall within the federal jurisdiction over copyright and trademark matters created by 28 U.S.C. § 1338. Counts One through Three and Count Six are state law claims which, in a non-diversity case such as this, must be brought under pendent jurisdiction.

## I. THE COPYRIGHT AND TRADEMARK CLAIMS

Section 1338 of the judicial code provides exclusive federal jurisdiction over claims "arising under" federal patent and copyright laws and concurrent jurisdiction over claims arising under the trademark laws. Analogous principles govern the exercise of federal jurisdiction in all three types of action. One such principle is that mere involvement of a patent, a copyright, or a trademark in a case is not sufficient to sustain federal jurisdiction. As Judge Friendly wrote in *T.B. Harms Co. v. Eliscu*,[3] the leading Second Circuit case on this subject, an action " 'arises under' the Copyright Act":

> if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.[4]

1. Amendment at para. 1.

2. Amendment at para. 2.

3. 339 F.2d 823 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).

4. *Id.* at 828.

As this Court has noted in *Stepdesign, Inc. v. Research Media, Inc.*,[5] in assessing a plea of lack of jurisdiction, "the formal allegations of the complaint must yield to the substance of the claim."[6] Where the focus of the complaint is on state law principles of breach of contract[7] and fraud,[8] there is no jurisdiction under § 1338.

■ Plaintiffs assert that Count Four states a claim arising under the copyright laws of the United States. Yet while Count Four concludes that defendants' continued distribution of the film constitutes infringement, its focus is not on the law of copyright. There is no doubt that if plaintiffs own the copyright in the film, defendants' unauthorized distribution of the film would violate the Copyright Act.[9] The real issue in the case is who owns the copyright. Thus, appropriately enough, the principal allegations of Count Four reiterate the allegations made under plaintiffs' contract and fraud counts, namely, that because of Saleh's material breaches of contract and fraud, "all right, title and interest in the copyrights in and to the Film belong and/or have reverted to Bear Creek."[10]

As defendants have noted, the plaintiffs' allegation that the copyright remained with Bear Creek flies in the face of the parties' amended agreement, which explicitly transferred all rights in the film to Saleh upon exercise of her option to purchase. Defendants also correctly note that the parties' contract, like the contract at issue in *Stepdesign*,[11] contains no express provision for reversion of the copyright in the event of a breach of contract. Plaintiffs' responses that reversion may take place without out an express provision and that plaintiffs' security interest in the film permits them to reclaim the copyright are to no avail. Far from enabling plaintiffs to distinguish *Stepdesign* and *T.B. Harms*, these arguments aimed at establishing copyright ownership all concern state law and do nothing more than demonstrate why plaintiffs' claim belongs in state court. In the absence of an express provision for reversion and a substantial question as to infringement, plaintiffs' claim does not "arise under" federal copyright law.

Plaintiffs' second attempt to assert federal jurisdiction under the copyright laws is Count Eight, which alleges that defendants have violated individual plaintiff McCall's copyright in the article upon which the film was originally based. The Count first realleges the breach of contract, common law fraud, and other Counts which are claims in favor of only plaintiff Bear Creek. McCall, the President of Bear Creek, asserting that she owns the copyright of the magazine article, then alleges:

98. Saleh's, Joseph Saleh's, and Angelika Films' continued reproduction, distribution, offering for sale, sale, advertisement and promotion of the Film, or its exercise of any other rights in the Film, violates McCall's rights in the Article under 17 U.S.C. § 106.

99. Upon information and belief, Saleh, Joseph Saleh, directly and/or through Angelika Films, intend to utilize the copyrights in and to the Film beyond

5. 442 F.Supp. 32 (S.D.N.Y.1977).

6. *Id.* at 33; *T.B. Harms Co. v. Eliscu*, 226 F.Supp. 337, 338 (S.D.N.Y.), *aff'd*, 339 F.2d 823 (2d Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *accord Berger v. Simon & Schuster*, 631 F.Supp. 915, 916–17 (1986); *Keith v. Scruggs*, 507 F.Supp. 968, 971 (S.D.N.Y. 1981).

7. *See Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32 (S.D.N.Y.1977); *Rotardier v. The Entertainment Co. Music Group*, 518 F.Supp. 919, 921 (S.D.N.Y.1981); *Keith v. Scruggs*, 507 F.Supp. 968, 971 (S.D.N.Y.1981); *Elan Assocs., Ltd. v. Quackenbush Music, Ltd.*, 339 F.Supp. 461, 462 (S.D.N.Y.1972).

8. *Cresci v. Music Publishers Holding Corp.*, 210 F.Supp. 253, 256 (S.D.N.Y.1962).

9. *Cf. Berger v. Simon & Schuster*, 631 F.Supp. 915, 917 ((S.D.N.Y.1986); *Elan Assocs., Ltd. v. Quackenbush Music*, 339 F.Supp. 461, 462 (S.D.N.Y.1972).

10. Complaint, Count Four at para. 67; *id.* at para. 68.

11. 442 F.Supp. 32, 34 (S.D.N.Y.1977); *see also Rotardier v. The Entertainment Co. Music Group*, 518 F.Supp. 919, 921 (S.D.N.Y.1981).

the scope of the rights purportedly granted to Mrs. Saleh, and in a fashion which would infringe McCall's copyrights in and to the Article.

■ Paragraph 98, which avoids any reference to the contract between Bear Creek and Saleh, is a further effort to state a claim based only upon the federal copyright laws. Yet this paragraph cannot be read in isolation from the rest of plaintiffs' complaint, which includes as an exhibit the contract that grants the defendants the right to conduct the very activities here claimed to infringe the copyright in the article. After realleging the substance of the previous counts, McCall cannot purport to raise a claim of infringement when the decisive issue in any case will be who owns the copyright in the film. As did the plaintiff in *Arvin Industries, Inc. v. Berns Air King Corp.*,[12] McCall alleges the conclusion of infringement while at the same time alleging facts that show there was no infringement because defendants' activity was authorized by agreement. As the Seventh Circuit noted in that case, plaintiff does not have "pleader's choice" to sue for a violation of its rights under federal copyright law which its own complaint shows did not occur.[13]

■ The allegation of paragraph 99, made upon "information and belief" is also clearly calculated to assert federal jurisdiction where none exists. It is significant that McCall does not allege that defendants in fact have extended the copyright in and to the film beyond the scope of the rights granted to Saleh. Instead, she remains content to allege that defendants "intend" to commit an infringement and provides not a single factual allegation to support this vague allegation. This paragraph obviously fails to state a claim of infringement.[14]

■ Finally, plaintiffs claim that Count Five arises under the federal trademark laws. Count Five alleges that defendants' failure to credit Bear Creek as producer of the film in "trailers, advertisements and other promotional materials.... constitutes false designation of origin and false representation in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." Defendants, relying on the rationale of *T.B. Harms*,[15] rightfully contend that plaintiffs' cause of action under Count Five is essentially one for breach of contract, and as such, does not entitle plaintiffs to assert this claim under federal court jurisdiction.

While § 43(a) is intended to protect persons involved in commerce from unscrupulous conduct, the Act does not interfere with the right of a product's creator and its distributor to agree as to which of their trademarks will appear on the product and in product advertisements.[16] Rather, the Lanham Act "establishes marketplace rules governing the conduct of parties not otherwise limited."[17] In cases where a contract covers the subject of whose trademark will be associated with the product, it is the contract and not the Lanham Act that de-

**12.** 510 F.2d 1070 (7th Cir.1975).

**13.** *Id.* at 1073.

**14.** *Cf. T.B. Harms Co. v. Eliscu,* 226 F.Supp. 337, 339 (S.D.N.Y.), *aff'd,* 339 F.2d 823 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).

**15.** Although challenges to jurisdiction under the trademark laws are more rare than challenges to jurisdiction under the patent or copyright laws, actions for breach of contract do not "arise" under the former any more than they arise under the latter. *See Everest & Jennings, Inc. v. E & J Mfg. Co.,* 263 F.2d 254, 262 (9th Cir.1958), *cert. denied,* 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959); *Rare Earth, Inc. v.*

*Hoorelbeke,* 401 F.Supp. 26, 37 n. 20, 48 (S.D.N.Y.1975); *The Plum Tree, Inc. v. Seligson,* 342 F.Supp. 1084, 1087 (E.D.Pa.1972).

**16.** Although the Lanham Act may serve to protect the public from false advertising, consumers have no standing to sue under the act. *See Colligan v. Activities Club of New York, Ltd.,* 442 F.2d 686, 692 (2d Cir.1971), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971); *In re "Agent Orange" Product Liability Litigation,* 475 F.Supp. 928, 934 (E.D.N.Y.1979).

**17.** *Silverstar Enters., Inc. v. Aday,* 537 F.Supp. 236, 242 (S.D.N.Y.1982).

termines the rights of the parties.[18] In such cases, the fundamental issues concern the law of contract, not the federal trademark laws, and federal jurisdiction is not available under 28 U.S.C. § 1338.

In view of plaintiffs' allegations in Count Five and the text of the parties' agreements, this dispute is governed by the parties' contract. Even as Count Five invokes the Lanham Act, it sets forth the Salehs' contractual obligations concerning credit:

> Under the agreement and pursuant to affirmative representations, Mrs. Saleh and Joseph Saleh were obligated to credit Bear Creek as the producer of the Film by stating that the Film is "A Bear Creek Production," on screen, and in all advertisements and other promotional materials for the film.[19]

While refraining from alleging that defendants have failed to credit Bear Creek in the film itself, plaintiffs go on to allege that "notwithstanding their obligation," the Salehs failed to "includ[e] the aforesaid credit in trailers, advertisements, and other promotional materials for the film."[20] Defendants in rebuttal argue that the parties' written agreement precludes any obligation to credit Bear Creek in advertisements and promotional materials, since it "represents the entire understanding of the parties,"[21] and grants Saleh "all rights" in the film apart from those expressly reserved in writing.

Plaintiffs have chosen to rely on the contract in seeking relief. They have set forth no reason upon which it can fairly be argued that the contract will not be dispositive of the parties' rights and obligations, and they have cited no § 43(a) cases in which jurisdiction was upheld under 28 U.S.C. § 1338 despite a related claim for breach of contract. Plaintiffs' cases either involved contracts containing no provision regarding credit for the allegedly mislabeled product,[22] or did not consider whether the contract at issue might preclude consideration of the Lanham Act and thus defeat jurisdiction under 28 U.S.C. § 1338.[23] Plaintiffs have thus failed to show that their claim "arises under" the trademark laws within the meaning of § 1338.

In conclusion, plaintiffs in attempting to vest jurisdiction in this court over its claims under the Copyright and Lanham Acts have disregarded the agreement upon which their various claims are predicated. Despite the number and variety of counts, plaintiffs' complaint centers about the contract entered into, alleged breaches of the contract, and alleged fraud with respect thereto. The federal courts have a duty and responsibility to see to it that only those who properly assert federal claims have recourse to their processes.[24] As plaintiffs have failed to show their claims "arise under" the federal trademark or copyright laws, those claims must be dismissed for lack of subject matter jurisdiction.

## II. THE CIVIL RICO CLAIM

Count Seven of plaintiffs' complaint alleges that defendants have violated the Racketeer Influenced Corrupt Organizations Act. In that Count, plaintiffs allege that defendants "were and are an enterprise within the meaning of 18 U.S.C. § 1961(4)," and have conducted and partici-

---

**18.** *See Yarway Corp. v. Eur-Control U.S.A., Inc.,* Civ. Act. No. C81–1476A, slip op., (N.D.Ga. August 20, 1984) [Available on WESTLAW, DCTU database] (holding that a contractual relationship between the parties "place[d] the case outside the scope of the Lanham Act"); *see also Silverstar Enters. v. Aday,* 537 F.Supp. 236, 242 (S.D.N.Y.1982).

**19.** Complaint at para. 76.

**20.** *Id.*

**21.** Agreement at para. 15.

**22.** *See Follett v. New American Library, Inc.,* 497 F.Supp. 304 (S.D.N.Y.1980); *R.H. Donnelley Corp. v. Illinois Bell Tel. Co.,* 595 F.Supp. 1202 (N.D.Ill.1984).

**23.** *See Smith v. Montoro,* 648 F.2d 602 (9th Cir.1981). *Smith* upheld pendent jurisdiction over breach of contract claims without considering whether the content of those claims undercut § 1338 jurisdiction.

**24.** *See Obolensky v. G.P. Putnam's Son's,* 628 F.Supp. 1552, 1556–57 (S.D.N.Y.1986), *aff'd by order,* 795 F.2d 1005 (2d Cir.1986).

pated in the "affairs of said enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c)," which activity included "two or more acts of indictable mail and wire fraud, in violation of 18 U.S.C. § 1341 & 1343."

In order to state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[25] In order to establish a pattern of racketeering activity, defendants must have committed within a ten-year period at least two predicate acts that are indictable or chargeable as criminal offenses.[26] Such acts include mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

As the Supreme Court noted in *Sedima, S.P.R.L. v. Imrex Co., Inc.,*[27] not just any two indictable acts will suffice to form a "pattern" of racketeering activity. Quoting from the Senate Report on RICO, the Court noted:

> The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern....[28]

Since *Sedima,* lower courts have sought to refine the notions of relationship and continuity to develop a meaningful definition of "pattern." On the one hand, they have held that the predicate acts must share sufficient facts in common that they satisfy the requirement of "relatedness." On the other hand, the acts must not be too closely

related, because they would then not suggest there is a threat of continuing criminal activity. As noted in *Richter v. Sudman,* "the issue is not the continuity of a single activity, but whether the defendants had a *practice* of engaging in the same or similar types of activity."[29] Thus, numerous cases in this circuit, examining the question at length, have held that where the criminal acts alleged form a single scheme, they do not constitute a "pattern of racketeering activity."[30]

In the instant case, plaintiffs fail to allege indictable acts that are sufficiently unrelated to pose a threat of continuing criminal activity. Here the parties were engaged in a single contract which defined their relative rights and duties. Although plaintiffs do not identify particular phone calls or communications through the mail, the complaint describes a series of commitments to plaintiffs made by defendants which the defendants then refused to keep. Based on these alleged misrepresentations, the parties entered into the original written contract, various oral agreements, and an amendment to the contract. All the misrepresentations, however, concerned a single transaction with plaintiffs, which culminated in Saleh's purchase of "all rights" in the film in consideration of payments that would total $350,000. The frauds committed were thus part of a single scheme. The carrying out of what amounts to a single fraudulent transaction, however, does not bring defendants' acts within the scope of civil RICO's proscription.

**25.** *Sedima, S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

**26.** 18 U.S.C. § 1961(5)

**27.** 105 S.Ct. 3275, 3285 n. 14 (1985).

**28.** *Id.* at 3255 n. 14 (quoting S.Rep. No. 91–617 at 158 (1969)).

**29.** 634 F.Supp. 234, 240 (S.D.N.Y.1986).

**30.** *See Furman v. Cirrito,* No. 82–4428, slip op. at 15 (S.D.N.Y. March 12, 1986) [Available on WESTLAW, DCTU database]; *Crummere v.*

*Brown,* No. 85–1376, slip op. at 8–9 (S.D.N.Y. April 3, 1986) [Available on WESTLAW, DCTU database]; *Frankart Distribs., Inc., v. R.M.R. Advertising, Inc.,* 632 F.Supp. 1198 (S.D.N.Y. 1986); *Richter v. Sudman,* 634 F.Supp. 234, 240 (S.D.N.Y.1986); *Soper v. Simmons Int'l Ltd.,* 632 F.Supp. 244, 250–55 (S.D.N.Y.1986); *Modern Settings v. Prudential-Bache Secs., Inc.,* 629 F.Supp. 860, 863 (S.D.N.Y.1986); *Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1199 (S.D.N.Y.1985); *see also Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986). For the minority view in this circuit see *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y.1985); *see also R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985).

### III. CONCLUSION

Plaintiffs' Count VII must be dismissed for failure to state a claim under RICO. Counts IV, V, and VIII must be dismissed for lack of subject matter jurisdiction. Because diversity is lacking and there are no surviving claims based on federal law, the remainder of plaintiffs' claims, all based on state law, are dismissed for lack of subject matter jurisdiction.[31]

So ordered.

---

**31.** *Cf. United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).