**REVLON, INC., Revlon International Corporation and Revlon Manufacturing (U.K.) Ltd., Plaintiffs,**

v.

**S. RAUCH MARKETING, INC., Stephen H. Marks, Garden State Maritime Services Corp., John Doe 1–6 and XYZ Corp., 1–5, said names John Doe and XYZ Corp. being fictitious, representing an unknown number of persons and corporations, the names of whom are presently unknown to Revlon, Defendants.**

No. 86 Civ. 3109 (JFK).

United States District Court,
S.D. New York.

May 7, 1987.

Frederick Newman, Blodnick, Pomeranz, Schultz & Abramowitz, P.C., Lake Success, N.Y., for plaintiffs.

Robert Ullman, Jacob Laufer, Steven Horowitz, Bass & Ullman, New York City, for defendants S. Rauch Marketing Inc., and Stephen H. Marks.

KEENAN, District Judge:

### Background

Plaintiffs' complaint is brought under the Racketeer Influenced and Corrupt Orga-

nizations Act, 18 U.S.C. §§ 1961–1968 (1982 & Supp.III 1985) ("RICO"), and also includes state law causes of action for fraud and breach of contract. The defendants have moved for dismissal under F.R.C.P. 12(b)(6) or, in the alternative, under F.R.C.P. 9(b). The defendants urge this Court to dismiss the civil RICO claims for numerous reasons. Thus, the case, as have so many other actions in the federal courts, requires consideration of one of the most controversial statutes in existence.

### Facts

The lawsuit involves the efforts of a major corporation to market its beauty products on a remote island far removed from this Court. Bahrain is an independent state in the Middle East, located off the Saudi Arabian coast. Plaintiff Revlon, Inc. ("Revlon") attempted to sell its merchandise there, and in the process utilized two of its subsidiaries and the defendants.

Revlon, a Delaware corporation with its principal place of business in New York, is a manufacturer of beauty products and fragrances. Revlon International Corp. ("RIC"), which has the same citzenship as Revlon, and Revlon Manufacturing (U.K.) Ltd. ("Revlon UK"), a British corporation, are both subsidiaries of Revlon. The defendant S. Rauch Marketing Inc., ("Rauch"), a New York corporation, is an export company, and defendant Stephen Marks, who resides in New Jersey, served as its president and principal shareholder. Defendant Garden State Maritime Services Corp. ("Garden"), a New Jersey corporation, is apparently a shipper in the export business. Al Hawaj Stores ("AHS") is an enterprise with a principal place of business in Bahrain and is engaged in and affects interstate and foreign commerce.

When Revlon ventures into a foreign market, it operates through its subsidiaries. Revlon first sells its products to RIC which in turn sells the products to another subsidiary. This second subsidiary will eventually effectuate the sales in the foreign market. In the context of the Bahrain market, Revlon sold products to RIC which then sold them to Revlon UK. Revlon created a special operating group to assist with certain foreign markets. The group, called the Developing and Emerging Markets Division ("DEM"), was staffed with employees from other Revlon subsidiaries.

The economics of foreign market sales differs from that of the domestic market. The prices charged by Revlon for products sold through DEM are usually much lower than if the products were to be sold in the United States. DEM informs all prospective purchasers of this policy. In order to obtain the products, the purchasers represent to DEM that the items will only be sold in a specified foreign market.

The instant complaint alleges that in 1983, Rauch, operating through Marks, informed DEM that it would be acting on behalf of AHS. AHS was apparently interested in purchasing Revlon's products and then selling them retail in Bahrain. Rauch allegedly knew of the price difference between the domestic and foreign markets. Rauch proceeded to place a few orders in 1984 and four additional orders in 1985. As a result, merchandise was delivered to Garden, who had represented that the products would be shipped to Bahrain. The essence of this lawsuit is the plaintiffs' allegation that at least part of the four 1985 orders were diverted for sale in the United States. The products were sold domestically by the unnamed corporate defendants. Hence, Rauch presumably would have purchased the fragrances at very low prices, only to have them sold at a much higher price in the domestic market.

The complaint contains several causes of action. Two causes of action are pleaded alternately under RICO section 1962(c), alleging participation in an enterprise affecting interstate or foreign commerce through a pattern of racketeering activity. Two claims are asserted alternatively alleging a conspiracy under section 1962(d) to violate section 1962(c). Each of those claims is advanced against all of the defendants. A cause of action is alleged against Rauch and Marks under section 1962(a) concerning use of income received from the racketeering activities of an enterprise. A similar claim is asserted against Garden and defendant "John Doe

# 1." State law claims are pleaded under the Court's pendent jurisdiction. A common law fraud count is asserted against Rauch and Marks and a breach of contract cause of action is alleged against Rauch.

## DISCUSSION

The application of RICO in the civil context is one of the more thought provoking and challenging issues in federal law today. The statute has been increasingly applied in what were once ordinary breach of contract and common law fraud cases. This has prompted one judge of this court to note in a case before him, "[p]laintiffs ... make the seemingly inevitable civil RICO claim now commonly appended in actions sounding in contract and fraud." *Bear Creek Productions, Inc v. Saleh*, 643 F.Supp. 489, 490 (S.D.N.Y.1986) (Weinfeld, J.).

To put the dispute concerning RICO in perspective, it is worthwhile to recall the Congressional goals embodied by the statute. RICO was designed "to seek the eradication of organized crime in the United States ... by providing new remedies to deal with unlawful activities of those engaged in organized crime." 116 Cong.Rec. 35191 (1970). In addition, the statute seeks to guard against the infiltration of organized crime into legitimate businesses. Subcomm. No. 5 of the House Comm. on the Judiciary, Hearings on S.30, and Related Proposals, relating to the Control of Organized Crime in the United States, 91st Cong., 2d Sess. 157 (1970). Congress deliberately used the term "racketeer" repeatedly in the statute. *See Exeter Towers Assoc. v. Bowditch*, 604 F.Supp. 1547, 1552 (D.Mass.1985). Thus, while RICO obviously has an important role to play in the civil arena, when analyzing the statute it is critical to keep in mind the evils Congress sought to attack.

Against this backdrop, courts in this district have generally taken a restrictive interpretation of the statute's "pattern" requirement. *See CATV Support Services, Inc. v. Magnavox CATV Systems, Inc.*, No. 86 Civ. 2276, slip op. 5–7 (S.D.N.Y. May 4, 1987) (Keenan, J.) [Available on WEST-LAW, DCT database]; *Franklin & Joseph, Inc. v. Continental Health Industries*, No. 85 Civ. 8756, slip op. at 5–10 (S.D.N.Y. Mar. 18, 1987) (Carter, J.) [Available on WEST-LAW, DCT database] (Lexis, Genfed library, Dist file); *Shopping Mall Investors, N.V. v. E.G. Frances & Co.*, No. 84 Civ. 1469, slip op. at 7–9 (S.D.N.Y. Jan. 29, 1987) (Keenan, J.) [Available on WEST-LAW, DCT database] (LEXIS, Genfed library, Dist file), *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518, 1534–35 (S.D.N.Y.1986) (Leisure, J.); *Sybedon Corp. v. Mendell*, 646 F.Supp. 937, 939–40 (S.D.N.Y.1986) (Haight, J.); *Beck v. Manufacturers Hanover Trust Co.*, 645 F.Supp. 675, 683–85 (S.D.N.Y.1986) (Sweet, J.); *T. & S. Commodities Inc. v. Becharas Brothers Coffee Co.*, No. 86 Civ. 0070 (S.D.N.Y. Sept. 30, 1986) (Owen, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file); *Bear Creek Productions, Inc. v. Saleh*, 643 F.Supp. 489, 495 (S.D.N.Y.1986) (Weinfeld, J.); *Savastano v. Thompson Medical Co.*, 640 F.Supp. 1081, 1085–86 (S.D.N.Y.1986) (Sand, J.); *Vereins-Und Westbank AG v. Carter*, 639 F.Supp. 620, 624 (S.D.N.Y.1986) (Knapp, J.); *Richter v. Sudman*, 634 F.Supp. 234, 238–39 (S.D.N.Y.1986) (Goettel, J.); *Frankart Distributors, Inc. v. RMR Advertising, Inc.*, 632 F.Supp. 1198, 1200–01 (S.D.N.Y.1986) (Tenney, J.); *Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1467 (S.D.N.Y.1986) (Pollack, J.); *Furman v. Cirrito*, No. 82 Civ. 4428 (S.D.N.Y. Mar. 12, 1986) (Cooper, J.) [Available on WEST-LAW, DCT database] (LEXIS, Genfed library, Dist file); *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860, 864 (S.D.N.Y.1986) (Carter, J.). *But see Bankers Trust Co. v. Feldesman*, 648 F.Supp. 17, 24–26 (S.D.N.Y.1986) (Conner, J.); *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1170 (S.D.N.Y.1985) (Duffy, J.). Indeed, the Supreme Court has appeared to endorse a narrow reading of what may constitute a pattern as a means of limiting the statute's seemingly limitless scope. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985).

Crafting a workable definition of "pattern" is not an easy task. The *Sedima* Court provided some guidance by quoting from the relevant Senate Report. " '[T]he factor of *continuity plus relationship ...* combines to produce a pattern.' " *Sedima* 105 S.Ct. at 3285 n. 14 (quoting from S.Rep. No. 91–617, p. 158 (1969)). It is worth noting that the Supreme Court added the emphasis to the quote. Courts in this district have used this test. *See, e.g., The Proctor & Gamble Co. v. Big Apple Industrial Buildings, Inc.,* 655 F.Supp. 1179, 1182 (S.D.N.Y.1987) (Leval, J.); *Bear Creek,* 643 F.Supp. at 495. However, the standard is troublesome in that its prongs are somewhat contradictory. The term relationship "implies that the predicte acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of conduct." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). Yet, continuity implies "predicate acts occurring at different points in time or invoking different victims." *Id.* As a result, courts should be wary of dwelling too much on either prong. *See id.* Thus, a proper balance must be struck so that civil litigants employ RICO against "acts that are sufficiently unrelated to pose a threat of continuing criminal activity." *See Bear Creek,* 643 F.Supp. at 495; *see also Soper v. Simmons International, LTD.* 632 F.Supp. 244, 254 (S.D. N.Y.1986).

■ When considered against this standard, the instant complaint's allegations fail to set forth a cause of action. In essence, the complaint asserts that Rauch violated its promise not to sell the plaintiff's merchandise in the United States. When read in the light most favorable to the plaintiff, the complaint states that this diversion took place with at least four orders during one year, and possibly more orders over a two year period. However, the challenged conduct is alleged to be in breach of the same promise. The fact that the breach was manifested on more than one occasion does not transform it into either multiple criminal episodes or an open ended scheme.

This result is in accord with other recent cases in this district, and with the statute's policies. In *Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198, 1199 (S.D.N.Y.1986), the parties entered a contract whereby hundreds of commercials would be aired on radio and television over several months. The defendants allegedly overcharged the plaintiff by billing for certain time periods during which the commercials were not aired. *Id.* at 1199. The court dismissed the complaint finding the fraudulent acts to be part of one transaction, despite the fact that the fraud concerned numerous commercial time slots. *See id.* Similarly, in *Proctor & Gamble, supra,* at 1180, 1181, a contractor puffed his experience and sought to "fleece his customer" by altering costs of a construction project to build three television studios. The court dismissed the RICO claim, noting that the case involved a single project of limited scope and duration. *Id.* at 1184. Simply put, the violation of a single contract, or breaching the same promise more than once is not an act "sufficiently unrelated to pose a threat of continuing criminal activity." *See Bear Creek,* 643 F.Supp. at 495. As Judge Newman observed rather presciently over 10 years ago,

> [w]hile the statutory definition makes clear that a pattern can consist of only two·acts, I would have thought the common sense interpretation of the word "pattern" implies acts occurring in *different criminal episodes,* episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity.

*United States v. Moeller,* 402 F.Supp. 49, 57 (S.D.N.Y.1975) (emphasis in original).

■ The Second Circuit's narrow holding in *United States v. Ianniello,* 808 F.2d 184 (2d Cir.1986), does not dictate otherwise. The court stated, "we hold that when a person commits at least two acts that have the common purpose of furthering a *continuing criminal enterprise* with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to

include are satisfied." *Id.* at 192 (emphasis added). The court was considering an enterprise that essentially engaged in an open ended scheme. To require two schemes in that situation would lead to the perverse result of allowing open ended schemes to circumvent RICO's provisions, despite their greater dangers to society. *See Morgan,* 804 F.2d at 975. Thus, in civil cases involving a finite scheme that concerns a limited number of victims and injuries, *see e.g., Franklin & Joseph, Inc. v. Continental Health Industries, Inc.,* 85 Civ. 8756, slip op. at 10 (S.D.N.Y. March 18, 1987) (Carter, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file); *The Proctor & Gamble Co. v. Big Apple Industrial Buildings, Inc.,* 655 F.Supp. 1179, 1182 (S.D.N.Y.1987) (Leval, J.), *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.,* 84 Civ. 1469, slip op. 8 (S.D. N.Y. Jan. 29, 1987) (Keenan, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file), a plaintiff should not be permitted to use RICO's weapons of treble damages and attorneys fees.

Interpreting the pattern requirement is clearly consistent with the judicial role. Not only has the Supreme Court indicated that this approach may be warranted, *see Sedima,* 105 S.Ct. at 3287, but courts have traditionally served this function. For example, section one of the Sherman Act speaks of "contracts ... in restraint of trade." 15 U.S.C. § 1. Yet, the courts gave this provision substance by defining it to include such conduct as price fixing, vertical retail price maintenance, concerted refusals to deal and tie-in arrangements. The restrictive approach being given to the pattern requirement in civil cases by the majority of courts in this district does not "eliminate the private action" in the manner feared by the *Sedima* court, *see Sedima,* 105 S.Ct. at 3287, but, rather, it merely limits the statute's reach.

### CONCLUSION

The complaint asserts causes of action under sections 1962(a)(c) and (d). Because each provision requires a pattern of racketeering activity and the Court has determined that no pattern is present, all of the RICO counts against all of the defendants are dismissed. The Court further declines to exercise its pendent jurisdiction over the state law claim. Although the defendants assert additional grounds for dismissal, the Court does not reach these arguments because of its analysis of the pattern requirement.

The complaint is dismissed.

SO ORDERED.