**The PROCTER & GAMBLE COMPANY and Riverview Productions, Inc., Plaintiffs,**

**v.**

**BIG APPLE INDUSTRIAL BUILDINGS, INC., Arol I. Buntzman, Martin William Halbfinger, Esq., George A. Fuller Company, the Arkhon Corporation, Haines Lundberg Waehler and John Does 1–10, Defendants.**

No. 86 Civ. 3474(PNL).

United States District Court, S.D. New York.

March 13, 1987.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Harold P. Weinberger, of counsel), for plaintiffs.

Paul Weiss, Rifkind, Wharton & Garrison, New York City (Edward N. Costikyan, Lewis A. Kaplan, of counsel), for defendant Big Apple Indus. Bldgs. Inc.

Max E. Greenberg, Cantor & Reiss, New York City (Jerome Reiss, Ray Goddard, of counsel), for defendant George A. Fuller Co.

Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y. (Howard J. Newman, of counsel), for defendant Haines Lundberg, Waehler.

Shea & Gould, New York City (Martin I. Shelton, of counsel), for defendant The Arkhon Corp.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action for rescission and treble damages pleading a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 *et seq.* as well as various state law causes of action for fraud and conversion. The court's jurisdiction is alleged to depend on 28 U.S.C. § 1331 by reason of the claim under the federal RICO statute. Defendants move to dismiss on the grounds that the complaint fails to plead a valid RICO claim.

*Background*

For the purpose of the motions to dismiss, the allegations of the complaint are taken as true.

The Procter & Gamble Company ("P & G"), plaintiff, produces several daytime television serials—"soap operas." In the past these programs were produced in the New York studios of the various networks. In 1983, P & G, together with its advertising agency Benton & Bowles, began looking for alternative sites for the production of these shows. Eight New York City sites were considered, including the Washburn Wire Factory (between E. 116th and E. 119th at the FDR Drive) owned by defendant Big Apple Industrial Buildings ("Big Apple"). Defendant Arol Buntzman, President and owner of Big Apple, approached P & G with a plan to renovate the old factory and develop a state-of-the-art television and film complex, unequaled outside of California. Buntzman, together with his attorney, defendant Martin Halbfinger, represented to P & G that Big Apple possessed sufficient experience and expertise to make the proposed project a reality. The complaint alleges that this was the beginning of "a pervasive and ongoing course of fraudulent conduct...."

In the Spring of 1984, Buntzman sent several communications to Benton & Bowles allegedly exaggerating Buntzman's abilities and experience and explaining that

the completed site would attract millions of visitors each year, thus netting additional profits for P & G. In response to requests by P & G, Buntzman estimated construction costs at approximately $18 million and total costs at $25 million. This estimate was supported by a letter from the proposed general contractor, defendant George A. Fuller Co., to Buntzman adopting the $18 million figure.

Plaintiff Riverview Productions was incorporated as a wholly owned subsidiary of Benton & Bowles to act for P & G in connection with the studio project. In January 1985 Riverview entered into a ten-year lease with Big Apple for the three as yet unbuilt studios. The terms were set at $1.2 million annual ground rent, plus amortization over the ten years of a loan for the entire construction costs of the project. P & G guaranteed Riverview's obligations.

Big Apple then experienced difficulty securing construction financing, and requested that P & G agree to guarantee a construction loan. At first P & G refused. During this time, Riverview continued its efforts to obtain precise estimates of construction costs. It is alleged that although Fuller estimated total costs at $40 million this was never divulged to P & G. Big Apple instead employed an outside consultant to make a new estimate of costs, which came in at $22.7 million for "hard" costs. This estimate was disclosed to plaintiffs, who thereupon estimated total costs in the $30–35 million range. Buntzman repeatedly assured P & G that these estimate were much too high.

In June 1985, P & G agreed to guarantee the loan. In the "Tri-Party Agreement," P & G agreed to guarantee $25 million of financing to be provided by Citibank and committed itself to fund the project if Citibank failed to do so. P & G later agreed to provide an additional $7 million in guarantees.

The complaint alleges that once construction on the project got underway, defendants made excessive and improper requisitions from Citibank, including $617,344.25 in legal fees for thirteen months for defendant Halbfinger, as well as additional charges for specific services already covered in the base contract price. Plaintiffs further allege that defendants have fraudulently abused escrow accounts, building a cushion against the possibility that their fraud would be detected and subsequently making improper withdrawals from these accounts.

\* \* \*

Defendants move to dismiss the complaint alleging lack of federal subject matter jurisdiction. The sole asserted basis for federal jurisdiction is the seventh cause of action, which alleges that defendants Buntzman, Halbfinger, Big Apple, and Fuller violated the RICO statute, 18 U.S.C. § 1962(b), (c), and (d).[1] Defendants contend these allegations do not implicate a violation of RICO.[2]

### Discussion

The question posed by this motion is whether a contractor who puffs as to his experience and seeks to fleece his customer by underestimating costs and mailing padded bills has thereby violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, making him liable to 20 years imprisonment, criminal and civil forfeitures, treble damages and attorneys' fees.

■ Accusations that the contractor has overstated his experience, understated the

---

1. Although the complaint refers to § 1962(b), (c) and (d), it is clear that the only portion to which the alleged facts relate are (c) and/or conspiracy under (d) to violate (c).

2. As a threshold matter, the complaint is clearly defective for failure to allege properly the "racketeering activity," within the scope of the statute. Although the complaint alleges the "sending" of many fraudulent letters and requisitions from one party to another, there is only one instance where mailing is alleged. At oral argument, plaintiffs claimed that this omission was merely inartful pleading, easily remedied by the filing of an amended complaint. Were this the only problem with the complaint, repleading might well be the proper course. I find, however, for the reasons stated in this opinion that the facts alleged in the complaint would not satisfy the "pattern" requirement, even were allegations of mailings included.

expected costs and overstated completed work used in bills for progress payments are as common to construction as steel, bricks and mortar. If those allegations implicate RICO, it is safe to assume that henceforth virtually every construction dispute will be waged in federal court as a RICO matter. Plaintiff-owners who previously asserted claims of fraud or breach of contract against the contractor in the state courts will now qualify for triple damages plus attorneys' fees, merely by asserting that the two or more false statements constituted a "pattern of racketeering activity." I am persuaded that the facts alleged here, although they may well support a state law fraud action, do not establish a violation of the federal RICO statute.

For years courts have groped to develop meaningful standards for determining the scope of this confusing statute. Controlling guidance comes from the Supreme Court's recent opinion in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 3287, 87 L.Ed.2d 346 (1985). After stating that "[a] violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," the Court attributed the unjustified expansion of civil RICO litigation, in part, to "the failure of Congress and the courts to develop a meaningful concept of 'pattern'." In note 14, which has become the principal source of guidance for these endeavors, the Court quoted the following passage from the Senate Report:

> "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added)....

105 S.Ct. 3275, 3285 n. 14.

This passage, which has since been cited by the Court of Appeals for the Second Circuit as authoritative, *United States v.*

*Teitler*, 802 F.2d 606, 611 (2d Cir.1986), furnishes the key to the present motion.

■ A violation of § 1962(c) is not reducible to any instance of fraud or frauds involving two or more mailings. It requires the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity...." And the requirement of the *pattern* is not satisfied without "continuity plus relationship."

■ Thus the identification of a few unrelated instances of fraudulent activity in an essentially lawful organization (for example, a charge that within a nationwide stock brokerage house, a salesman in Phoenix and another in New York had each independently engaged in a fraudulent transaction) would not satisfy the element of relationship between the frauds or of conduct of the enterprise. *See Teitler*, 802 F.2d at 611 ("sporadic activity" is not a pattern). On the facts alleged in this case, the deficiency pertains primarily to the other element of the pattern requirement. An undertaking by a contractor engaged in a lawful enterprise to bilk one customer in one construction project of finite duration and scope does not satisfy the "continuity" element of the pattern of racketeering.[3]

■ Both continuity and relationship, as well as the breadth necessary to satisfy the element of conduct of an enterprise through a pattern, must be present to prevent trivialization of RICO's requirements and its invocation, with concomitant federal jurisdiction, in practically every allegation of fraud. The allegation here of a scheme by a contractor to bilk its customer as to a construction project, even by repeated fraudulent assertions, is not sufficient to involve the RICO statute.

Plaintiff seeks comfort from the Court of Appeals' recent decision in *United States v. Ianniello*, 808 F.2d 184 (2d Cir.1986). Although there is language in *Ianniello* which on a superficial reading can give apparent support to plaintiff's argument, this notion disappears when the language

---

**3.** As an additional problem, I would question whether a contractor's defrauding of one customer for a single finite construction project involved sufficient breadth of criminal activity to constitute the conduct of an enterprise through a pattern of fraud.

is read carefully in the context of the facts and the holding. The defendants in *Ianniello* were "part of a group that skimmed profits from bars and restaurants that they owned and operated in New York City." 808 F.2d at 186. The proof showed numerous episodes of fraudulent skimming activity continuing over a period of years at several different bars and restaurants owned or operated by defendants. The principal defendants concealed their interests in the businesses, made false applications to the State Liquor Authority, and defrauded the New York State Department of Taxation and Finance as well as other legitimate creditors. The Court found that the goal of the enterprise was a "fraud continuing indefinitely." 808 F.2d at 191. It rejected the implausible argument that this indefinitely continuing fraudulent scheme, carried out in numerous episodes of fraudulent activity at different sites, was insufficient to satisfy the pattern requirement, for lack of multiple schemes. It concluded, "we hold that when a person commits at least two acts that have the common purpose of furthering a *continuing criminal enterprise* with which that person is associated, the elements of relatedness and continuity ... are satisfied." 808 F.2d at 192 (emphasis added).

The concerns discussed in *Ianniello* are a world apart from those at issue here. Of course, a "continuing criminal enterprise" carrying out a continuing scheme of fraud through a broad pattern of predicate acts of fraud at various locations is sufficient to satisfy the requirements of the RICO statute and the *Sedima* footnote without requiring, in addition, a multiplicity of schemes. That conclusion, however, was premised on a finding that there had been a continuing scheme involving multiple instances of skimming funds with respect to several places of business. It in no way supports the plaintiff's proposition that an undertaking to defraud one customer in the performance of a single finite construction project satisfies the essential elements. This single finite project does not involve the necessary continuity.

And as to the Court's discussion of discrete crimes, as opposed to continuing crim-

inal activity, this is addressed to a completely different point. The point made by the Court is that once the continuing pattern of criminal activity of the enterprise has been shown, it is not necessary that every predicate act used to prove the complicity of individual defendants be of a continuing nature. Continuity is necessary to prove a pattern. But once it is shown that the enterprise has been conducted through a continuing pattern of racketeering activity, each participant whose two or more criminal acts constituted part of that pattern is individually liable. The crimes of each participant need not be of a continuing nature. This does not suggest that continuity of criminal activity is unnecessary to meet the requirement of showing that the *enterprise* was conducted in a pattern of racketeering activity.

It must be understood that *Ianniello* dealt with an enterprise that was defined in terms of continuing criminal objectives. Although the *Ianniello* defendants' actions related to the conduct of lawful business, the "enterprise" found by the court was wholly criminal. The court's statements about the relationship of the predicate acts to that enterprise presuppose its continuing criminal nature. Plaintiff here seeks to apply quotations from that case, out of context, to a lawful enterprise—a construction project. This misapplication produces the false message that two fraudulent acts are sufficient to convert a lawful enterprise into a RICO entity if those acts are "done in the conduct of the affairs of the enterprise." 808 F.2d at 191. This reading is inconsistent with the facts and the holding of *Ianniello*, incompatible with *Teitler* and the Supreme Court's interpretation in *Sedima*, and insensitive to the requirements of the RICO statute.

The Seventh Circuit's language in *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), a case cited with approval in *Ianniello*, is instructive. While rejecting any rigid multiple scheme requirement, the court explained that "the mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ... [sufficient to] satisfy the continuity aspect

of the pattern of racketeering activity." *Id.* at 976–77. Judge Weinfeld reached a similar conclusion in this district in *Bear Creek Productions v. Saleh,* 643 F.Supp. 489, 495 (S.D.N.Y.1986), in which he held that since "the parties were engaged in a single contract which defined their relative rights and duties" the alleged acts were not "sufficiently unrelated to pose a threat of continuing criminal activity." Unlike *Teitler,* where the enterprise involved the defrauding of numerous insurance companies over an extended period of time, 802 F.2d at 608, or *Ianniello,* in which the defendants were part of an indefinitely continuing broad criminal enterprise, the RICO defendants in this case were engaged in a single lawful project of finite scope and duration—constructing a television studio for a customer. Allegations of numerous instances of fraud in carrying out this project does not bring it within the scope of the RICO statute.

The complaint fails to allege a violation of RICO. There is, accordingly, no basis for federal jurisdiction of this conventional state law fraud action. The complaint is dismissed without prejudice to repleading the fraud claims in an appropriate court.

SO ORDERED.