Mazal **KHAIMI**, Plaintiff,

v.

Gloria **SCHONBERGER**, Jacob Schonberger, the New Homestead, Dr. Mangubhai Patel, Helen Glass, Barbara "Doe" (last name unknown), Cindy "Doe" (last name unknown), and Jenny "Doe" (last name unknown), Defendants.

**No. 85 CV 4212.**

United States District Court, E.D. New York.

July 10, 1987.

---

**7.** Petitioner testified, however, that he did not request counsel prior to confessing. (R. 163.)

Bruce Brickman, New York City, for plaintiff.

Dwyer, Peltz & Walker, New York City, for Patel.

Gabarini, Scher & DeCicco, New York City, for all other defendants.

## ORDER

McLAUGHLIN, District Judge.

This lawsuit arises from defendants' alleged efforts to evict plaintiff from

a home for the aged. The complaint asserts a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and various pendent state claims. Defendants' motion to dismiss were referred to United States Magistrate A. Simon Chrein, who recommended that the RICO claim be dismissed. I agree with his conclusion, although for slightly different reasons. I believe the fatal defect in the RICO claim lies not so much in its description of the pattern of racketeering, but rather in its failure to plead the continuing nature of the enterprise. Except to that extent, I adopt his Report and Recommendation, which is annexed, as the Opinion of the Court.

■ Nowhere in the complaint does plaintiff identify the alleged enterprise, describe its structure, or state its purpose. The omissions alone justify dismissal. Magistrate Chrein, interpreting the RICO claim most charitably, assumed the New Homestead residence to be the enterprise and the other defendants to be the persons conducting the affairs of that enterprise through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). He believed, however, that the complaint did not sufficiently state a pattern because it failed to allege two or more acts of racketeering activity as "a regular part of the way the defendants do business" (Report & Recommendation at 22).

■ I do not read *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and specifically its footnote fourteen, *see id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14, as narrowly as does the Magistrate. Two acts of racketeering, related in the sense that they are both done in furtherance of the affairs of an enterprise, are sufficient to constitute a pattern. *See United States v. Ianniello,* 808 F.2d 184, 190 (2d Cir.1986).

■ After *Sedima,* which noted the requirement of "continuity plus relationship," *see* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, the Second Circuit suggested that this issue was "best addressed in the context of 'enterprise,'" *Ianniello, supra,* 808 F.2d at 191. It has since stated that "whether one looks for the requisite continuity and relatedness by examining the pattern or the enterprise is really a matter of form, not substance." *See Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 51 (2d Cir.1987). It has never, however, retreated from its emphasis on the continuing, ongoing nature of a RICO violation.

An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). This circuit requires that, under section 1962(c), the enterprise be a continuing operation and that the acts be related to the common purpose. *See Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21–22 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. Mazzei,* 700 F.2d 85, 89 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). *Ianniello, supra,* 808 F.2d at 191. Where the object of the enterprise is to conduct a scheme intended to continue indefinitely, with "no obvious terminating goal or date," the enterprise requirement is established. *Id.* at 192. An enterprise with "but one straightforward, short-lived goal ... is not sufficiently continuing to constitute an 'enterprise.'" *Beck, supra,* at 51.

■ In this case the alleged enterprise had but one illicit goal: to evict plaintiff from the residence. Such an enterprise with its discrete, short-term object, is not sufficiently "continuing" under *Beck.*[1]

---

**1.** This case is thus distinguishable from *Reiter's Beer Dist. Inc. v. Christian Schmidt Brewing Co.,* 657 F.Supp. 136 (E.D.N.Y.1987), which was decided prior to *Beck.* There the goal of the alleged enterprise was to drive a competitor out of business and obtain the competitor's business for itself. *See id.* at 139 n. 1. It involved far more than the single event that is alleged to be the object of the enterprise in this case. In addition, the complaint in *Reiter's* alleged a

This case does differ from *Beck*, in that there the enterprise "ceased functioning" upon the achievement of its single, short-lived goal. *See* 820 F.2d at 51. Here the New Homestead obviously did not cease to exist once it ejected plaintiff. This highlights a gap in the Second Circuit's recent analyses. The claim in *Ianniello* was sufficient because, although the enterprise had only one object, it was one that continued indefinitely. The claim in *Beck* was insufficient because the enterprise's only object was discrete and short-term. This leaves unaddressed the situation where the enterprise has more than one purpose, but its only *criminal* goal is discrete and short-lived, and the enterprise does not cease to exist after its accomplishment. Neither *Beck* nor *Ianniello* involved the case where, as here, the enterprise survives the achievement of its discrete, short-term criminal object.

■ Given the Circuit Court's consistent position that RICO requires a "continuing criminal enterprise," *Ianniello*, *supra*, 808 F.2d at 192, I conclude that the Second Circuit would not regard an entity that functions legitimately upon the termination of its single criminal episode as an enterprise the conduct of which violates RICO. Illegal conduct undertaken by a lawful enterprise during the course of one "project of finite duration and scope," *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 655 F.Supp. 1179, 1182 (S.D.N.Y. 1987), is "sporadic activity," *Sedima, supra*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 91–617, at 168 (1969)), and is not sufficiently open-ended to fall within the Second Circuit's view of the scope of the statute, *see Procter & Gamble, supra*, 655 F.Supp. at 1182–83.

Thus, although the New Homestead did not cease to exist upon the eviction of plaintiff, its functioning as a criminal enterprise ended upon the occurrence of that discrete, definite event. Because the New Homestead is accordingly "not sufficiently continuing to constitute an 'enterprise' " under the statute, *Beck*, at 51, the RICO claim cannot withstand the motion to dismiss. The exercise of pendent jurisdiction over the remaining state claims is inappropriate. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The complaint is therefore dismissed in its entirety.

SO ORDERED.

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE

April 1, 1987.

A. SIMON CHREIN, United States Magistrate.

The plaintiff, Mazal Khaimi, brought this lawsuit in November 1985, alleging injuries caused by defendant The New Homestead, its proprietors, agents, servants, and/or employees, due to their violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and pendent state law claims for breach of contract, fraud, intentional infliction of emotional distress, negligence and wrongful eviction. This case was referred to the undersigned for a Report and Recommendation on defendants' motions for dismissal for failure to state a claim pursuant to Federal Rule 12(b)(6), judgment on the pleadings pursuant to Federal Rule 12(c), or for summary judgment pursuant to Federal Rule 56, and on the defendants' motions for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

In July, 1983, the plaintiff, Mazal Khaimi, a seventy year old woman, entered into

three-year course of activity in pursuit of the goal of the enterprise. *See id.* The instant complaint describes activities over a six-month period. While the duration of the illegal operation should not be the sole factor considered, it is some indication of whether a "continuing criminal enterprise," *Ianniello, supra*, 808 F.2d at 192, has been alleged.

a written contract[1] with defendant, The New Homestead (hereinafter "Homestead"), for the provision of residential facilities, as well as medical and other forms of care. Complaint at ¶ 10.

On May 9, 1985, plaintiff was hospitalized for pneumonia under the supervision of the defendant Dr. Patel. Complaint at ¶ 11. *See also* Affidavit of Mangubhai Patel (Patel Affidavit) dated April 17, 1986 at ¶ 7. Dr. Patel subsequently arranged the transfer of the plaintiff to a psychiatric hospital on May 20, 1985. Patel Affidavit at ¶¶ 10–11. Dr. Patel alleges that he made these arrangements due to the plaintiff's depression and after a consultation with the plaintiff's psychiatrist, Dr. Shinbach, who allegedly instructed him to refer the plaintiff to the psychiatric hospital. *Id.* The plaintiff, however, contends that Dr. Patel on May 19 and 20, 1985, led her to believe that she would be returning to the Homestead on May 20, 1985. Affidavit of Mazal Khaimi (Khaimi Affidavit) dated May 9, 1986 at ¶¶ 18, 19, 22. Furthermore, the plaintiff states that she was taken to the psychiatric hospital as a result of Dr. Patel's trickery and false representations and that the first time she was informed of the transfer was by the ambulance attendants after she had checked out of her hospital room. *Id.* at ¶¶ 23, 31. Moreover, she claims that upon arrival to the psychiatric hospital, where she was taken without her consent, she called the Homestead and was told by defendant Gloria Schonberger that she had to stay at the psychiatric hospital and could not return to her room. *Id.* at ¶ 26. Subsequently, at the plaintiff's demand, her psychiatrist arrived at the psychiatric hospital and informed her that contrary to Dr. Patel's allegations, he did not instruct, authorize or direct the transfer and that Dr. Patel was the responsible party. *Id.* at ¶ 28. Additionally, Dr. Shinbach agreed that although she was not depressed or in need of psychiatric hospitalization, in view of the fact that she was told that she could not return to her room at the Homestead, suggested that she remain at the psychiatric hospital. *Id.* at ¶ 29. Following a discussion with her daughter and son-in-law, the plaintiff agreed to remain. *Id.* at ¶ 30. The plaintiff's allegations are supported by affidavits from her daughter, Emma Katz, and son-in-law, Daniel S. Katz. *See* Exhibit B to Plaintiff's Memorandum of Law, Affidavit of Emma Katz dated May 9, 1986; Exhibit C to Plaintiff's Memorandum of Law, Affidavit of Daniel S. Katz (Katz Affidavit) dated May 9, 1986. The plaintiff was allowed to return to her room at the Homestead after her release from the psychiatric hospital which she contends was due to letters which were written by Mr. Katz to both the Homestead and Dr. Patel threatening legal action. Khaimi Affidavit at ¶ 33; *see also* Exhibit D Attached to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss. The plaintiff alleges that the activities of the defendant described herein were intended to evict her from her room at the Homestead Khaimi Affidavit at ¶ 32.

In October 1985, the plaintiff alleges that she went on a vacation to Israel, leaving all of her possessions locked in her room at the Homestead. *Id.* at ¶¶ 34–36. In her absence plaintiff claims the defendant, through the use of the phone and the mails, fraudulently misrepresented that her room was available for rent. Complaint ¶ 19. This, she alleges, constituted mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. *Id.* In addition, plaintiff claims that the defendants mailed a handwritten note to plaintiff's daughter written by defendant Helen Glass stating that they intended to return plaintiff's Social Security check to the Social Security Administration since they had no contractual relationship with plaintiff. *Id.* at ¶ 21. This, she alleges, constituted mail fraud. 18 U.S.C. § 1341. *Id.*

Upon her return on November 7, 1985, the plaintiff alleges that she was denied entrance into her room and was forcibly ejected from the lobby of the Homestead

---

1. This alleged written contract is not found in the record at this time, however, its existence is not disputed by any of the defendants.

by the defendant Jacob Schonberger. Khaimi Affidavit at ¶¶ 38–39. Plaintiff alleges that this was contrary to the assurances made prior to her departure by defendants Jacob Schonberger and Helen Glass that her room would be waiting for her when she returned. *Id.* at ¶¶ 37–39. Moreover, she claims that while she was away defendants called the New York State Department of Social Services falsely representing to the agency that she would not be returning to her room in order to obtain permission to rerent her room to another resident at a higher rent. Complaint ¶ 20; Plaintiff's Memorandum of Law in Opposition at p. 7. This she claims is wire fraud in violation of 18 U.S.C. § 1343. On the day she returned, plaintiff claims the defendants called her daughter, Emma Khaimi, stating that plaintiff's room was rented to someone else and that plaintiff was not to return to the Homestead. Complaint ¶ 17. This, plaintiff alleges, is also wire fraud in violation of section 1343 of Title 18.

On the following day, November 8, 1985, the plaintiff gained access to her room by the use of her key. Khaimi Affidavit at ¶ 40. She alleges, however, that her stay was cut short as she was coerced into opening her locked closet and removing her possessions by defendants Barbara "Doe," an exercise teacher, Cindy "Doe," a nurse, and Jenny "Doe," a nurse, employees of the Homestead, and then was forcibly ejected. *Id.* at ¶¶ 40–42. As a result of the above mentioned acts by the defendants, the plaintiff contends that she lost part of her social security benefits, was unable to find a suitable place of residence for a substantial period of time, sustained loss of personal property and was caused a great deal of hardship and suffering. *Id.* at ¶¶ 43–45.

Therefore, the plaintiff alleges that the defendants conspired to remove her from her residence and resorted to threats, violence, coercion, extortion, unlawful imprisonment, fraudulent misrepresentations to her as well as to the New York State Department of Social Services and the Social Security Administration, and intentionally made a false diagnosis in order to effectuate their conspiracy. Complaint at ¶¶ 10–22. She further claims that the defendants committed wire and mail fraud under §§ 1341 and 1343 of RICO in re-renting her room by making false representations in several different instances regarding her rights to the room at the Homestead. *Id.* at ¶¶ 19–21. This, she claims was a conspiracy to permanently remove her from her room in order to re-rent it at a substantially higher rent than she was paying.

## DISCUSSION

In considering the defendants' motions the undersigned will consolidate the defendants' motions for failure to state a claim upon which relief can be granted under Rule 12(b)(6) judgment on the pleadings under Rule 12(c) and for summary judgment under Rule 56, treating these as motions for summary judgment under Rule 56 Federal Rules of Civil Procedure. *See Samara v. United States,* 129 F.2d 594, 597 (2d Cir.), *cert. denied,* 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942); *Note of the Advisory Committee on Rule 12(b)(6);* Fed.R.Civ.P. 12(c). When deciding a motion for summary judgment, the court should render a judgment only if "the pleadings ... together with the affidavits.... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, if the judgment is not rendered and a trial is necessary, the court "by examining the pleadings and the evidence before it.... shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy ... and directing such further proceedings in the action as are just." Fed.R.Civ.P. 56(d).

The violations of the RICO statute alleged in the plaintiff's complaint include Sections 1962(d) and 1962(c). Complaint at ¶¶ 23–24. Section 1962(d) provides as follows: "[i]t shall be unlawful for any person

to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Therefore, in order to allege a "conspiracy" under Section 1962(d) the plaintiff must allege a Section 1962(c) claim. Section 1962(c) provides in part that: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).

### INTERSTATE COMMERCE

Therefore, pursuant to § 1962(c), it must be determined whether the alleged activities have any affect on interstate commerce, to determine if this court has subject matter jurisdiction.

The defendants contend that the complaint does not contain an allegation as to the defendants' activities involving or affecting interstate commerce. *See* Statement Pursuant to Local Rule 3(g) at ¶ 1. In support of the defendants' position, defendant Jacob Schonberger states in his affidavit that the New Homestead is a local residence and that the residents "are admitted from the surrounding communities in the City of New York and Long Island," and that the "New Homestead does not, either directly, or indirectly ... engage in or affect interstate or foreign commerce." Affidavit of Jacob Schonberger dated May 22, 1986. at ¶¶ 7–8.

The plaintiff contends that although the complaint does not contain an allegation of an affect on interstate commerce, she urges that this not be fatal to her cause of action and moves the court for an amendment of her complaint in the interest of justice. *See* Plaintiff's Reply to the Supplemental Reply of the Defendants Other than Patel dated June 12, 1986 at p. 1. Furthermore, the plaintiff claims that discovery is essential on the issue of the nexus to interstate commerce, particularly on the question of whether the Homestead admits residents from outside of New York State. *See* Supplemental Memorandum in

Response to the Reply Memorandum of the Defendants Other than Dr. Patel dated June 2, 1986 at pp. 2–3. Additionally, the plaintiff claims that an effect on interstate commerce is evident by the fact that the Homestead is heavily reliant on social security payments received by its residents originating from the federal government and that in her particular case the defendants caused her federal supplemental social security income payments to be reduced which is a sufficient effect to warrant application of the statute. *Id.* at 2; *see also* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss dated May 9, 1986 at pp. 9–10.

■■■ To satisfy the interstate commerce requirement of the statute the enterprise, not the individual defendant conducting the pattern of activity, must engage in or affect interstate commerce. *United States v. Groff,* 643 F.2d 396, 400 (6th Cir.) *cert. denied,* 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 103 (1981); *United States v. Nerone,* 563 F.2d 836, 852–54 (7th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978). The nexus to interstate or foreign commerce, however, need only be minimal. *United States v. Rone,* 598 F.2d 564, 573 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).

■■■ It has not been disputed by the defendants that most, if not all, of the financial resources which they regularly receive to aid their elderly patients originate from the federal government. I find that this fact is sufficient to provide the interstate commerce nexus. In addition, although the defendant Jacob Schonberger stated that the present residents of the Homestead are New York State residents only, the defendant fails to claim that all potential residents of the Homestead are required to be from New York in order to be admitted. Therefore, I find that the required minimal affect has been met.

### THE ENTERPRISE

Section 1962 of the RICO statute requires that the defendant be employed by or associated with an "enterprise." 18

U.S.C. § 1962(c). Although the statute's wording implies that the enterprise must be the "victim" of the alleged racketeering activity, the United States Supreme Court, in *United States v. Turkette*, held that the statute's definition of "enterprise" was not so limited but embraced " 'any individual, partnership, ... union or group of individuals associated in fact' " without any limitation on the purpose of that association. *United States v. Turkette*, 452 U.S. 576, 580–81, 101 S.Ct. 2524, 2527–28, 69 L.Ed.2d 246 (1981) (*quoting* 18 U.S.C. § 1961(4)).

Following the *Turkette* decision, the Second Circuit has taken the position that the "enterprise" and the "pattern of racketeering activity" can be identical and that the "enterprise" need not have financial goals or an existence which could be defined apart from the predicate acts constituting the pattern of activity. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2d Cir.), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1983); *United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Mazzei*, 700 F.2d 85, 89–90 (2d Cir.), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

In addition, the Second Circuit has recently held that under § 1962(c) the entity which is the alleged "enterprise" may not simultaneously be the alleged "person" conducting the affairs of the enterprise through a pattern of racketeering activity (the defendant) as it may not be "associated with" only itself. *Bennett v. United States Trust Company of New York*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

In the present case, the defendants other than defendant Dr. Patel, contend that the complaint should be dismissed because it does not identify the enterprise which defendants are allegedly operating. They assert that the RICO claim against the New Homestead should be dismissed since it is the alleged "enterprise," and, therefore, cannot be the alleged person conducting the affairs of that enterprise. Defendants' Reply Memorandum of Law at p. 8.

The defendant, Dr. Patel, on the other hand, contends that he has "never been an employee of the New Homestead, nor has [he] ever been paid by the New Homestead. Furthermore, [he has] no proprietary interest whatsoever in the New Homestead." Patel Affidavit dated April 17, 1986 at ¶¶ 1–5; *see also* Defendant Patel's Memorandum of Law in Support of Motion to Dismiss at pp. 8–9. It must be noted, however, that Dr. Patel in his answer did not deny paragraph 7 of the plaintiff's complaint, *see* Verified Answer of Defendant Mungubhai Patel (Patel Answer), alleging that he is "an employee or agent, or associate of the New Homestead." Complaint at ¶ 7.

Based on the foregoing, I find that there is a question of fact as to whether Dr. Patel is associated with the New Homestead with the common purpose of engaging in the alleged pattern of racketeering activity precluding summary judgment against him. *See United States v. Tille*, 729 F.2d 615 (9th Cir.1984) (finding that proof of the defendants' association with the illegal activities of the enterprise is all that is required, not that there be proof of actual employment or association independent of the racketeering activity). As to the remaining individual defendants, if the New Homestead is the "enterprise," then I find that as a matter of law these individual defendants are within the contemplation of the statute as the persons conducting the affairs of that enterprise. I recommend, however, that the claims against the New Homestead as a defendant, be dismissed as a matter of law since it is established that it could not simultaneously be the enterprise and the person who conducts the affairs of the enterprise.[2] *Bennett*, 770 F.2d at 315.

---

**2.** While the plaintiff drew the court's attention to a recent Second Circuit RICO case, *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir.1987), that decision is inapposite here. *Cullen* leaves intact the rule stated in *Bennett v. United States Trust Co. of New York*, 770 F.2d 308 (2d Cir.1985) "that a solitary entity cannot, as a matter of law, simultaneously constitute both the RICO 'Person'

## PATTERN OF
## RACKETEERING ACTIVITY

In an effort to establish the existence of a racketeering activity, the plaintiff's complaint alleges that the defendants conspired to and actually removed her from her residence by resorting to threats, violence, coercion, extortion, unlawful imprisonment, fraudulent misrepresentations, and by intentionally making a false diagnosis in order to effectuate their conspiracy. Complaint at ¶¶ 10–22; *see also* Khaimi Affidavit at ¶¶ 4–6, 9–43. Furthermore, the plaintiff alleges that the defendants committed wire and mail fraud under §§ 1341 and 1343 of Title 18 United States Code in re-renting her room while falsely representing to her that the room would be available when she returned from a vacation. Complaint at ¶¶ 19–21; *see also* Khaimi Affidavit at ¶¶ 34–37.

In order to establish a "pattern of racketeering activity" the statute requires at least two acts of racketeering activity, as defined in Section 1961(1), within ten years. 18 U.S.C. § 1961(5). "Racketeering activity" includes "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under state law and punishable by imprisonment for more than one year," 18 U.S.C. § 1961(1)(A), or "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...." 18 U.S.C. § 1961(1)(B).

The plaintiff contends that the alleged activities of the defendants constituted a pattern of racketeering activity, subjecting defendants to RICO liability. Plaintiff's Reply to the Supplemental Reply of the Defendants Other Than Patel at pp. 3–9. In support of this contention, plaintiff first asserts that on May 20, 1985, defendant Patel had not told her that he was sending her to the psychiatric hospital and instead told her that she was being taken to the New Homestead. Khaimi Affidavit at ¶¶ 19–22. When plaintiff arrived at the psychiatric hospital she contacted defendant Gloria Schonberger by phone who told her that she could not return to her room at the Homestead and that she would have to remain in the hospital until the papers were complete to transfer her to another residence. *Id.* at ¶ 26. This, plaintiff contends, constituted extortion under 18 U.S.C. § 1951 as well as false representations, coercion in the first degree, unlawful imprisonment and criminal negligence in violation of the New York Penal Code. Complaint ¶ 13.

In addition, Plaintiff alleges that in October 1985, she left for a three month in Israel fully intending to return to her room at the Homestead and was assured by defendants Jacob Schonberger and Helen Glass that her room would still be available to her when she returned and that her social security checks would be sent to her daughter while she was away. Khaimi Affidavit at ¶¶ 34–37. Plaintiff alleges that in her absence the defendant in a phone call to the New York State Department of Social Services, falsely represented to that agency that she was not returning in order to obtain permission to rerent her room, in violation of 18 U.S.C. § 1343. Plaintiff's Memorandum of Law in Opposition at p. 7; *see also* Complaint at ¶ 20. This prompted an investigation by the Agency during which the defendant Helen Glass told the investigator that she helped plaintiff buy a one-way ticket to Israel which plaintiff contends is not true. *See* Exhibit C to Plaintiff's Memorandum of Law, Affidavit of Daniel S. Katz (Katz Affidavit) dated May 9, 1986 at ¶ 9.

Plaintiff then asserts that she returned from Israel on November 7, 1985 and upon entering the lobby of the Homestead was "grabbed by the arm" and forced to leave by defendant Jacob Shonberger. Khaimi Affidavit at ¶ 38. The plaintiff contends that this constitutes extortion as defined in 18 U.S.C. § 1951(b)(2) as well as coercion in

whose conduct is prohibited and the entire RICO 'enterprise' whose affairs are impacted by

the RICO person." *See Cullen*, at 729.

the first degree under New York Penal Code § 135.65. Plaintiff's Memorandum of Law at pp. 9–10 and Appendix B. The defendant Helen Glass then proceeded on that same day to make a phone call to plaintiff's daughter, Emma Khaimi, stating that plaintiff's room was rented to someone else and that plaintiff could not return to the Homestead. Complaint at ¶ 17. This was alleged to constitute wire fraud in violation of 18 U.S.C. § 1341 Complaint at ¶ 17.

Finally, on November 8, 1985 plaintiff went to the Homestead, entered her room with her key and was allegedly forced by defendant Homestead's employees to open the lock on the closet in her room and remove her personal belongings, effectively forcing her to move out against her will, all of which plaintiff alleges constituted extortion in violation of 18 U.S.C. § 1951 as well as coercion in the first degree, robbery and larceny in violation of Sections 135.65, 160.10 and 155.05 respectively of the New York Penal Code. *Id.* at ¶ 18; *see also* Plaintiff's Memorandum of Law, Appendix B.

■ Defendants, contend that the activities alleged do not constitute a pattern within the meaning of the RICO statute. *See* Defendant Patel's Memorandum of Law in Support of Motion to Dismiss (Patel Memo) dated April 16, 1986 at p. 7; *see also* Defendants' (other than Patel) Reply Memorandum of Law (hereinafter Defendants' Reply Memo) docketed September 4, 1986 at pp. 3–4. In support of this contention, the defendants' rely on the Supreme Court's interpretation of the statute's "pattern of racketeering activity" requirement in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedima*, the Court emphasized that RICO liability "'*requires* at least two acts of racketeering activity,'" but that "while two acts are necessary [for RICO liability], they may not be sufficient." *Id.* at 496, n. 14, 105 S.Ct. at 3285 n. 14 (*quoting* § 1961(5)) (emphasis in original). What is crucial is "'*continuity plus relationship* which combines to produce a pattern.'" *Id.* (*quoting*, S.Rep. No. 91–617, p. 158

(1969)) (emphasis in original). There must be some evidence of an ongoing organization which functions as a continuing unit. *Id.* The defendants argue that because plaintiff has failed to allege facts evidencing a pattern of racketeering activity of the sort envisioned by RICO the complaint should be dismissed. *See* Defendants' Reply Memo at pp. 3–4.

The defendants while admitting that plaintiff's claims "are for negligence, intentional infliction of an conspiracy to inflict emotional, distress, fraud and conspiracy to commit fraud, breach of contract, and wrongful eviction," contend that these are state law claims and should be litigated in the state courts. *See* Motion to Dismiss by Defendants Shonberger, Glass and New Homestead dated April 25, 1986; *see also* Patel Memo at p. 9 (asserting that the allegations involve only a state law claim of medical malpractice which should be litigated in state court).

I find that the pleadings in this case and the facts alleged fail to state a claim of a pattern of racketeering activity and are inadequate to withstand a motion for summary judgment. As stated earlier, in order for a predicate act to constitute "racketeering activity" it must fall within its definition under § 1961(1). Of the predicate acts alleged by the plaintiff, the only ones that could have constituted "racketeering activity" within the statute's definition are the alleged crimes of mail and wire fraud, extortion and coercion. I will consider each of these crimes as alleged to evaluate if they fall within the definition racketeering activity.

Plaintiff has not alleged that she was subject to any threat involving murder, kidnapping, gambling, arson, robbery, bribery, or dealing in narcotics or other dangerous drugs chargeable under State law and punishable as a felony. Moreover, though the plaintiff does allege that this threat involved extortion which could fall within the statutory definition, she has failed to allege facts evidencing extortion connected with her transportation to the psychiatric hospital.

The plaintiff's allegations of mail and wire fraud under Title 18 of the United States Code while they might constitute a single or even two acts of racketeering activity, they are not sufficient to constitute a "pattern" of racketeering activity. The Supreme Court in *Sedima* has made it clear that two acts, while necessary, may not be in and of themselves sufficient to constitute a "pattern" as mandated by the statute. 473 U.S. at 496, 105 S.Ct. at 3285 n. 14. The Court recognized that while two acts of murder are sufficient to constitute a "pattern," two acts of mail or wire fraud are not the acts constituting the pattern which must be ongoing in the sense that they are a regular part of the way the defendant does business. *See Sedima, supra.* In this case, plaintiff has not alleged that the defendants constituted an ongoing organization or that any of the alleged acts committed against the plaintiff were a regular part of the way the defendants do business. Consequently, the complaint must be dismissed and summary judgment be granted to the defendants.

### RULE 11 SANCTIONS

Notwithstanding the recommendations made herein it is the view of the undersigned that sanctions under Rule 11 are not warranted.

Rule 11 of the Federal Rules of Civil Procedure imposes "appropriate sanctions" on the attorney or represented party in situation wherein a pleading is not "... warranted by a good faith argument for the extension ... of existing law." The body of law surrounding RICO is in a state of flux and the arguments advanced by plaintiff herein cannot be viewed as so frivolous as to merit sanction. To conclude otherwise may have the effect of chilling creative advocacy. *See Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985) (emphasizing that Rule 11 sanctions were not intended to "stifle the enthusiam or chill the creativity that is the very lifeblood of the law."); *Taylor v. Prudential Bache Securities,* 594 F.Supp. 226, 229 (N.D.N.Y.), *aff'd mem.,* 751 F.2d 371 (2d Cir.1984); *Advisory Committee Notes to Rule 11* ("The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."). While plaintiff's counsel's arguments in this case are contrary to the law in this circuit, they were plead in good faith and were not frivolous and, therefore, I recommend that defendants' motion for Rule 11 sanctions be denied.