A. BURTON WHITE, M.D., P.C., Profit Sharing and Trust, Plaintiff,

v.

Andrew E. BEER, Jack R. Orben, Fernando L. Kindler, Walter Turner, Peter B. Humphrey, Fiduciary Counsel, Inc., Associated Family Services, Inc., and Starwood Corporation, Defendants.

No. 87 CV 1278.

United States District Court,
E.D. New York.

Jan. 27, 1988.

Robert G. DelGadio, Garden City, N.Y., for plaintiff.

Jerome Marshak, Shereff, Friedman, Hoffman & Goodman, New York City, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants have moved pursuant to Fed. R.Civ.P. 12(b)(6)[1] for an order dismissing

1. Defendant Fernando L. Kindler does not join in this motion. As counsel for the remaining

Count III of the Complaint on the grounds that it fails to allege a "pattern of racketeering activity" as required by 18 U.S.C. § 1962(c) and for an order dismissing the entire Complaint on the ground that it fails to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b). For the reasons set forth below defendants' motion is granted.

## FACTS

Plaintiff brings this action to recover, *inter alia*, damages allegedly caused by defendants' fraudulent investment practices during the period October 1, 1985 through August 1986, in violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, section 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d), and common law fraud.

Count I of the Complaint alleges the following:

Prior to October 1, 1985, plaintiff entrusted its pension and profit sharing fund to defendant Fiduciary Counsel, Inc. ("Fiduciary") to act as an investment advisor for purposes of generating retirement capital and income. The person in charge of making investment decisions on behalf of Fiduciary was defendant Walter Turner, an employee of the three corporate defendants. Complaint ¶¶ 9, 16.

On or about October 1, 1985, defendants solicited plaintiff to invest funds in a "special trading options program" that was run by the defendant Fernando Kindler, an employee of the three corporate defendants, whereby Kindler, Fiduciary and defendant Starwood Corporation ("Starwood") would have complete discretion in making investments to sell put and call options for the Standard & Poor's 100 Index. Complaint ¶¶ 9, 20. Kindler and Turner allegedly made representations to plaintiff that the option program was specifically designed with built-in safeguards to guarantee profit. Plaintiff also was told, *inter alia*, that its investments would be hedged, that the

defendants possessed excellent skills, integrity and experience, that it would be fully informed as the trading developed, and that, based on an illustration defendants provided, its investment would generate a profit of $22,625 on eighteen sales of puts and calls in a ten-month period with a $25,000 margin. Complaint ¶ 20.

Plaintiff also alleges that defendants omitted to state numerous material facts that were necessary under the circumstances to prevent the statements made from misleading plaintiff. These omissions include the alleged absence of both a proven track record for the "special trading options program" and a system of reporting the transactions, that trading would not be limited, but would be done without regard to plaintiff's express and tacit investment goals, and that profit was unlikely. Complaint ¶ 21.

Plaintiff, relying on the representations made by the defendants, and the previous relationship plaintiff maintained with them, executed an agreement with Starwood whereby Starwood and Kindler were given discretionary authority over plaintiff's assets to proceed with the special trading program. Complaint ¶ 22. The representations made by Turner and Kindler are alleged to be false and known by the defendants to be false when made, with the intent to deceive plaintiff, Complaint ¶ 23, and obtain its money and property by means of fraud. Complaint ¶ 24.

During the period October 1, 1985 through August 1986, defendants purchased and sold put and call options for Standard & Poor's 100 Index. Defendants executed these trades, communicated via telephone, though Fidelity Brokerage Services, Inc., a brokerage firm designated by plaintiff. Complaint ¶ 25. Confirmation of each trade, monthly statements and investment advise were received through the mail. Complaint ¶ 26. From February 25, 1986 through June 17, 1986, defendants purchased securities in eight separate transactions, allegedly without having first sold the particular put and call option.

defendants correctly point out, it appears that Kindler has not been served with process.

Complaint ¶ 28. Plaintiff claims to have been damaged in the amount of $86,213.83 as a result of these unauthorized transactions that constitute fraud in the sale of securities. Complaint ¶¶ 27, 28, 29.

Plaintiff also alleges that it was not provided with written information concerning the status of the special trading option program on a continuing basis. Complaint ¶ 30. The statements received by plaintiff in July, August and October 1986 allegedly are misleading in that they did not provide plaintiff with information concerning whether a particular transaction started as a sale of put and call option or a purchase of a put and call option. *Id.* The effect of the misleading statements was to cover up the falsity of the initial representations and the fraud practiced by the defendants in making unauthorized and fraudulent trades by purchasing call options. *Id.*

Plaintiff alleges that Andrew E. Beer, Jack B. Orben, President and Chairman of the Board of three corporate defendants, respectively, and the three corporate defendants violated their duty to exercise due diligence, "learn and/or verify the essential facts relative to plaintiff," monitor transactions and supervise plaintiff's account, and supervise Kindler, Turner and defendant Peter B. Humphrey, another employee of the corporate defendants, Complaint ¶¶ 7, 8, 9, 31, despite their knowledge or reckless disregard of Kindler's, Turner's and Humphrey's activities. Complaint ¶ 32.

In Count II of the Complaint, plaintiff seeks rescission of the contract and restitution.

Count III of the Complaint is leveled against all of the defendants except Starwood. It alleges that defendants' fraudulent activities in connection with the purchase and sale of put and call options for the Standard & Poor's 100 Index, constitute an "ongoing 'racketeering activity'" within the meaning of RICO. Complaint ¶ 37. Plaintiff alleges that "the particular methods which defendants employed to further their fraudulent schemes," which also constitute a pattern of separate predicate offenses, include wire fraud (telephone calls to Fidelity to execute trades and to

plaintiff), mail fraud (causing Fidelity to mail confirmations of securities trades to defendants and plaintiff; and defendants mailing to plaintiff fraudulent letters that seek to conceal the fraud), and the individual acts of securities fraud as alleged in Count I. Complaint ¶¶ 38, 39. Defendants Beer, Orben, Turner, Humphrey, Kindler, Fiduciary and Associated are alleged to be the persons who participated in and conducted the pattern of racketeering through Starwood, the enterprise, Complaint ¶ 41, and through the use of Starwood, conspired to violate RICO. Complaint ¶ 42. On this Count, plaintiff seeks treble damages and attorney's fees pursuant to 18 U.S.C. § 1964(c).

Plaintiff, seeking damages under a theory of common law fraud, alleges in Count IV that defendants, acting as fiduciaries, knew or recklessley failed to learn of plaintiff's investment objectives and the risks inherent in the purchase and sale of uncovered options, fraudulently recommended a program, the participation in which caused plaintiff damages, and perpetrated a fraud on the plaintiff and the public. Complaint ¶¶ 44–50.

## DISCUSSION

### I. THE RICO COUNT

■ Citing, among other cases, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), defendants contend that because the predicate acts alleged in the Complaint relate merely to one particular investment program involving one particular investor, it lacks the combination of continuity and relationship necessary to constitute a pattern. Defendants rely on the holdings of several district court cases in this Circuit, most of which were decided before *United States v. Ianniello*, 808 F.2d 184 (2d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). Defendants also argue that *Ianniello* is limited to criminal application. In the alternative, and in an effort to find a safe harbor in *Beck v. Manufacturer's Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987), they argue that the complaint fails to allege the

existence of an ongoing enterprise for a substantial period that resulted in financial gain to the defendants.

### A. Adequacy of Pleading "Pattern of Racketeering Activity"

The Second Circuit put to rest, at least for the moment, the confusion that sprung from *Sedima's* provocative footnote 14.[2] *Ianniello* expressly rejected "multiple episodes" as a requirement of the "pattern" element for pleading RICO. *See Ianniello*, 808 F.2d at 190–92 & n. 15. In this Circuit, two related predicate acts satisfy the pattern requirement of 18 U.S.C. § 1961(5). *See id.* at 192; *Beck*, 820 F.2d at 51. Plaintiff has alleged multiple and related predicate acts of securities fraud, mail fraud and wire fraud. That this alleged scheme involved only one investor and one investment program has no impact on the "pattern" requirement.[3]

### B. Adequacy of Pleading "Enterprise"

It is in the concept of "enterprise" and the ten-year requirement of § 1961(5) that we find the relatedness and continuity necessary for a violation of § 1962(c). *See*

Albany Ins. Co. v. Esses, 831 F.2d 41, 44 (2d Cir.1987); *Furman v. Cirrito*, 828 F.2d 898, 902–03 (2d Cir.1987); *Beck, supra*, 820 F.2d at 51; *Ianniello, supra*, 808 F.2d at 191. To survive a motion brought pursuant to either Rule 12(b)(6) or Rule 56, plaintiff must allege, *inter alia*, that "the enterprise is a continuing operation and that the acts [are] related to [a] common purpose." *Ianniello, supra*, at 191.

> [W]hen a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied.

*Id.* at 192.

Paragraph 41 of the Complaint attempts to plead that an enterprise existed:

> The defendants, Beer, Orben, Turner, Humphrey, Kindler, Fiduciary and Associated are either persons employed by or associated with Starwood, an enterprise engaged in and whose activities affect interstate commerce, and said defendants participated in and conducted, directly or

**2.** As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provision in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff)

(RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975). *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3292, n. 14, 87 L.Ed.2d 361 (1985).

**3.** Defendants seek to argue that *Ianniello* is limited to criminal application and cite *Proctor & Gamble Co. v. Big Apple Indus. Buildings, Inc.*, 655 F.Supp. 1179 (S.D.N.Y.1987) as authority. Inasmuch as the Second Circuit has expressly applied *Ianniello* to civil RICO actions, *see Albany Ins. Co. v. Esses*, 831 F.2d 41, 44 (2d Cir. 1987); *Beck, supra*, 820 F.2d at 51, this Court declines the invitation to make a further "mess in the RICO decisions"; *Furman v. Cirrito*, 828 F.2d 898, 908 (2d Cir.1987) (Pratt, J. dissenting) by failing to follow controlling precedent.

indirectly, the affairs of Starwood, the enterprise through the pattern of racketeering activity described in paragraphs 16 through 33, all in violation of RICO, 18 U.S.C. § 1962(c).

Absent is a description of the structure of Starwood as an enterprise, the purpose of the enterprise and an allegation that the enterprise continued indefinitely—that is—it "had no obvious terminating goal or date." *Ianniello, supra*, 808 F.2d at 191. Plaintiff's failure to so plead is fatal to its RICO claim. *See Khaimi v. Schonberger*, 664 F.Supp. 54, 56 (E.D.N.Y.), *aff'd*, 838 F.2d 1203 (2d Cir.1987). Consequently, Count III is dismissed.

## II. SUFFICIENCY OF THE FRAUD ALLEGATIONS

### A. Adequacy of Pleading Scienter

 Mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, require a showing of intentional fraud. *See United States v. Von Barta*, 635 F.2d 999, 1005 n. 14 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). Allegations of intentional fraud must contain some factual basis for conclusions of intent that give rise to a "strong inference" that fraud was intended by the defendants. *Beck, supra*, 820 F.2d at 50 (quoting *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987)).

Specific allegations of facts that demonstrate a motive for committing fraud and an opportunity to commit fraud will establish an inference of scienter. *See Beck, supra*, 820 F.2d at 50. The motive alleged by plaintiff here is contained in paragraph 24 of the Complaint where it is claimed that "defendants ... obtained money and property of plaintiff by means of the false representations [referring to paragraph 20] ... and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon plaintiff." Nowhere

in the Complaint does plaintiff allege *specific* facts that support this broad conclusory statement. Notably absent is an allegation that each of the defendants profited from the transactions. Indeed, as letters from the defendants to plaintiff, annexed to and made part of the Complaint, indicate, advisory fees were waived, and later limited to only a percentage of plaintiff's profits.[4]

Where, as here, motive is not readily apparent

it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, *see United States v. Simon*, 425 F.2d 796, 808–09 (2d Cir.1969), *cert. denied*, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970); *cf. Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1124 (S.D.N.Y. 1982), though the strength of the circumstantial allegations must be correspondingly greater, *cf. United States v. Simon, supra*, 425 F.2d at 808–10.

*Id.*

Plaintiff has not made such a showing here. Accordingly, plaintiff's allegations of mail and wire fraud are dismissed.

### B. Specificity of Fraud Allegations

 Averments of fraud are subject to the special pleading requirements of Fed.R. Civ.P. 9(b), which states: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Rule, which is intended to minimize the potential for irreparable harm to defendants' reputations, *see Decker v. Massey–Ferguson Ltd.*, 681 F.2d 111, 114 (2d Cir.1982), requires that plaintiff give each defendant fair notice of the conduct complained of. *See Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978).

Specifically, a complaint alleging fraud must

(1) give particulars as to the respect in which the plaintiff contends the statements were fraudulent, that is, it must

---

4. In ¶ 29 of the Complaint, plaintiff refers to an Investment Advisers fee paid to Starwood. Plaintiff does not indicate when this payment was made. In light of plaintiff's previous, and apparently profitable previous relationship with the defendants, and that all the corporate defendants are alleged to operate without corporate distinction, *see* Complaint ¶ 13, this Court is unable to determine whether this payment was made pursuant to the trades of which plaintiff complains, and whether the payment, or anticipation thereof, provided a motive to defraud.

indicate which statements the plaintiff claims were false or deceptively incomplete and state why they were false and incomplete; (2) detail the time and place at which the statements were made; and (3) identify the defendants charged with having made those statements either directly or as controlling persons or aiders and abetters.

*Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F.Supp. 658, 666 (S.D.N.Y.1987) (citing *Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir.1985)).

Although the Complaint alleges that defendants Kindler and Turner made material misrepresentations to plaintiff, Complaint ¶ 20, all the defendants are charged with fraud. *See, e.g.*, Complaint ¶¶ 23–25. Absent also is an identification of the particular defendants who allegedly committed the acts described in paragraphs 25, 26, 28, 30 and 38 and in Count IV. Even with respect to Kindler and Turner, the Complaint fails to fix a time and place at which the material representations were made or state facts that support an inference that these statements were false. The Complaint utterly fails to identify and describe defendant Humphrey's role in this alleged scheme. The Complaint's allegations that the defendants omitted to state material facts with regard to the investment program similarly are insufficient. *See* Complaint ¶ 21. Finally, the allegations contained in paragraph 21, in addition to other allegations, are made "upon information and belief." No statement as to the basis of plaintiff's alleged knowledge, however, is included in the Complaint. Based upon these flaws in pleading, the Complaint must be dismissed, without prejudice.

## CONCLUSION

Accordingly, defendants' motion to dismiss the Complaint is granted. Plaintiff shall serve and file within twenty (20) days of the entry of this Order an Amended Complaint.

SO ORDERED.